Helen BORDEN, Appellant,

v.

George BORDEN and Mary Theresa
Hawkins, Appellees.

No. 5417.

District of Columbia Court of Appeals.

Argued Nov. 9, 1970.

Decided May 5, 1971.

Joel J. Rabin, Washington, D. C., for appellant.

No appearance was entered for appellees.

Allan Ashman and John M. Joyce, Washington, D. C., counsel for National Legal Aid and Defender Association, filed a brief as amicus curiae.

Sherman L. Cohn, Washington, D. C., also entered an appearance for National Legal Aid and Defender Association and filed an amicus curiae brief as counsel for the Federal Bar Association's National Committee on Legal Assistance to the Poor.

Terry F. Lenzner, Jason I. Newman and Benjamin Stein, counsel for the Office of Economic Opportunity, filed a brief as amicus curiae.

Before KERN, GALLAGHER and NEBEKER, Associate Judges.

KERN, Associate Judge:

The issue presented by this appeal is whether it was error for the trial judge sitting in the Domestic Relations Branch of the District of Columbia Court of General Sessions to refuse to vacate his order

assigning an attorney employed by the Neighborhood Legal Services Program (NLSP) to represent the defendant in this action, when the plaintiff was already represented by an NLSP lawyer.

On September 22, 1969, appellant Helen Borden filed a complaint seeking a divorce from appellee George Borden on the ground of adultery. On April 2, 1970, appellant, represented by an attorney from NLSP and proceeding in forma pauperis, moved for assignment of counsel to represent appellee and his co-respondent[1] and for waiver of the payment of the minimum fee required by G.S. Civ.Rule 5(a) to be paid by an applicant for divorce.[2] The trial court ordered David S. Raycroft, an attorney employed by the NLSP, to enter an appearance on behalf of and represent appellee. On June 8, 1970, appellant's attorney, joined by appellee's attorney, filed a motion to set aside the trial court's order of appointment of counsel on the ground that since both attorneys in the case were employed by the NLSP the order created a conflict of interest under the Code of Professional Responsibility,[3] and the divorce ultimately obtained could be invalid due to alleged collusion.

On June 9, 1970, the trial judge denied the motion to set aside his appointment of counsel, relying specifically on his order in another case, McGee v. McGee, D.C. Gen.Sess., 98 Wash.L.Rptr. 929 (May 26, 1970), which stated, inter alia:

Since, therefore, no economic conflict exists, no corporate interests is in any way involved and no legal partnership as such has been disclosed it would appear that in fact and objectively speaking there is no conflict of interest.

Mrs. Borden appeals from this order of denial.

■ While the trial court's refusal to set aside his order of appointment is not final in the sense of disposing of the case on its merits, Lee v. Zentz, D.C.Mun.App., 44 A.2d 872 (1945), it does have "a final and irreparable effect upon the rights of the parties" and is therefore appealable. Raney v. D.C. Transit System, Inc., D.C. Mun.App., 166 A.2d 261, 262 (1960). The effect of the trial court's order is to force the parties to go to trial represented by attorneys who practice law within the same organization, which appears on its face to constitute a conflict of interest, and who have stated upon the record their inability to represent the cause of their clients and remain faithful to the Code of Professional Responsibility. In addition, the parties have ground for concern that the final decree in the case on the merits could be subject to the subsequent charge of collusion and its validity thus put in question. Jones v. Jones, 20 App.D.C. 38 (1902). We think that the administration of justice would best be served by recognizing the cloud which the order of appointment of counsel has put upon the present proceedings and by treating the order as final for the purpose of review. See Gillespie v. United States Steel Corp., 379 U.S. 148, 152, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964).

1. D.C.Code 1967, § 16–918 provides:
 In all uncontested divorce cases, and in any other divorce or annulment case where the court deems it necessary or proper a disinterested attorney shall be assigned by the court to enter his appearance for the defendant and actively defend the cause. The attorney shall receive such compensation for his services as the court determines to be proper, which shall be paid by the parties as the court directs.

2. Harris v. Harris, 137 U.S.App.D.C. 318, 424 F.2d 806 (1970), held that the trial court abused its discretion in requiring indigents to pay the $100 minimum fee upon application for assignment of an attorney to represent the other party in an uncontested divorce action. The court reasoned that Congress did not intend to permit well-to-do persons to obtain divorces and withhold that right from indigent persons. See also Boddie v. Connecticut, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (decided March 2, 1971).

3. The Code was adopted by the District of Columbia Bar Association in May 1970.

■ Turning to the merits of the assignment of counsel order, it is axiomatic that members of the same law firm may not represent adverse parties. ABA Code of Professional Responsibility (Final Draft, July 1, 1969) p. 67, fn. 2 and pp. 70–71, fn. 29; ABA Standards Relating to the Prosecution Function and the Defense Function (Tent. Draft, March 1970), p. 214. Corporation Counsel[4] concedes this but takes the position that:

> NLSP cannot be analogized to the typical law firm for purposes of application of the conflict-of-interest concept * * * [NLSP's] activities more logically fall within the group legal services concept. (Respondent's brief at 4–5).

It argues that under N.A.A.C.P. v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963), the constitutional right being asserted must be balanced on the scale of public interest against the alleged professional impropriety. When this is done, in the instant case, so the argument goes, the right and need of the poor to have legal representation in domestic relations matters is paramount to the allegedly remote possibility of a conflict of interest growing out of the representation of both parties by NLSP attorneys. It is pointed out that since NLSP attorneys receive no compensation from their clients there can be no economic conflict of interest, as would be the case if they were practicing in the same law firm.

We are not persuaded that the possibility of conflict of interest which appellee's attorney proffered as his reason for wishing to withdraw from participation in this case is remote.[5] While the NLSP is not a law firm it is a group of attorneys practicing law together in an organizational structure much like a law firm. It has a Board of Directors and an Executive Director who are analogous to a firm's managing partners. ABA Formal Opinion 324, p. 6 (August 9, 1970). It has one attorney in each of its branch offices whose responsibility is to supervise the junior attorneys, much like a firm's senior partner working with his associates. All NLSP attorneys participate in office meetings and receive intra-office communications on substantive law, litigation techniques and tactics and office policy.[6] Lawyers who practice their profession side-by-side, literally and figuratively, are subject to subtle influences that may well affect their professional judgment and loyalty to their clients, even though they are not faced with the more easily recognized economic conflict of interest.[7] In addition,

4. In re Rabin, D.C.App., 276 A.2d 729 and N.L.S.P. v. Ryan, D.C.App., 276 A2d 728, which we also decide today, were consolidated with the instant case for argument on the merits since the central issue in all three cases is the propriety of the trial court appointment of an NLSP attorney to represent the defendant in a divorce action instituted by an indigent already represented by an NLSP attorney. Corporation Counsel appeared and filed a brief on behalf of respondent in N.L.S.P. v. Ryan and we have considered and discussed its arguments in this case also.

5. The Code of Professional Responsibility contains Disciplinary Rules which "state the minimum level of conduct below which no lawyer can fall without being subject to disciplinary action." (CPR Preamble, p. 2). DR 5–105(A) provides:
 A lawyer shall decline proffered employment if the exercise of his independent judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, except to the extent permitted under DR–105(C). [Concerning consent where it is obvious that he can represent both after full disclosure]. (Footnotes omitted.)
 We deem it essential to enforce the Code. See In re Meeker, 76 N.M. 354, 457, 414 P.2d 862, 864 (1966).

6. Neighborhood Legal Services Program v. Ryan, D.C.App., 276 A.2d 728 (decided this day), Petitioner's brief, Exhibit J.

7. The report of the Committee on Standards Relating to the Prosecution Function and the Defense Function of the American Bar Association Project on Standards for Criminal Justice, which Committee was chaired by Justice Bur-

the appointment of attorneys who work together presents an impression scarcely consistent with the bar's efforts to maintain public confidence in the law and lawyers.[8]

Also we fail to find in this case the extraordinary circumstances present in N.A.A.C.P. v. Button, *supra,* where legal representation to vindicate constitutional rights of a group of citizens was simply unavailable except in the form of group legal services which the State contended amounted to barratry, maintenance and champerty. With all deference to the trial court's efforts to date to assure full representation of all who seek access to the Domestic Relations Court we are not persuaded that the supply of attorneys available in the District of Columbia has been exhausted [9] so that NLSP attorneys must now represent *both* sides of a divorce action.

■ Finally, we are reluctant to approve any action in the matter of professional ethics which distinguishes between attorneys who are in private practice and attorneys who are not. See American Employers Ins. Co. v. Goble Aircraft Specialties, 205 Misc. 1066, 1075, 131 N.Y.S.2d 393, 401 (1954) ("The Canons of Professional Ethics make it pellucid that there are not two standards, one applying to counsel privately retained by a client, and the other paid counsel paid by an insurance carrier.") In the first place, Congress has expressly recognized that "anti-poverty lawyers" are to be governed by the traditional standards of the profession. 42 U.S.C. § 2809(a) (3). The ABA has held that legal aid attorneys have a "primary obligation of loyalty" to their clients and are required "to act in accordance with the Code of Professional Responsibility." ABA Formal Opinion 324, *supra* at 8. Other jurisdictions have specifically barred anti-poverty lawyers from representing adverse parties in domestic relations litigation because such representation falls afoul of the Canons. New Jersey Advisory Committee on Professional Ethics, Opinion No. 155, 92 N.J.L.J. 9 (May 29, 1969). Professional Ethics, Selected Opinions of the Professional Ethics Committee, The Florida Bar (1959–1967), pp. 466–67. We are reluctant ever to make an exception from the professional norm for attorneys em-

---

ger, now Chief Justice of the United States, states at p. 216:

In all of these situations [where two lawyers associated in the practice of law appear on both sides of the case] the controlling consideration is the avoidance of any possibility of division or dilution of loyalties. *Relationships between lawyers who are associated in practice are so close and the potential for conflict is so great,* given the lack of any strong reason for permitting such representation, that a flat prohibition is warranted against lawyers from the same firm or office appearing as prosecutor and defense counsel. * * * (Emphasis added.)

The Code of Professional Responsibility provides at EC 5–21:

The obligation of a lawyer to exercise professional judgment solely on behalf of his client requires that he disregard the desires of others that might impair his free judgment. The desires of a third person will seldom adversely affect a lawyer unless that person is in a position to exert strong economic, political, or social pressures upon the lawyer.

*These influences are often subtle, and a lawyer must be alert to their existence* * * * *if he or his client believes that the effectiveness of his representation has been or will be impaired thereby, the lawyer should take proper steps to withdraw from representation of his client.* (Emphasis added.)

8. The Code of Professional Responsibility provides at EC 9–1:

Continuation of the American concept that we are to be governed by rules of law requires that the people have faith that justice can be obtained through our legal system. A lawyer should promote public confidence in our system and in the legal profession. (Footnotes omitted.)

9. We note, for example, that the *amicus* brief filed in this case by the Federal Bar Association National Committee on Legal Assistance to the Poor represents that the Federal Bar Association has established a panel of 200 government lawyers who have volunteered to handle without compensation civil cases for indigents.

ployed by the government or others who provide legal representation without compensation from the client because then we might encourage a misapprehension that the special nature of such representation justifies departure from the profession's standards. We should avoid always any action that would give the appearance that government attorneys [10] are "legal Hessians" hired "to do a job" rather than attorneys at law. On the other hand, we should expect always from these attorneys uncompromising adherence to the profession's established standards.

 We conclude that it was error for the trial court to refuse to vacate its assignment of an NLSP attorney to represent appellee in the trial of appellant's divorce action which was being presented by another NLSP attorney and that this case must be remanded for appointment of new counsel for appellee.

So ordered.

---

10. This would of course include attorneys in the offices of not only NLSP, but the Public Defender, the Corporation Council, and the United States Attorney, as well as members of the bar who are "house counsel" for corporations engaged in the practice of "public interest" law.