177 N.J. Super. 365 (1981)
426 A.2d 1035
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
RONALD ROGERS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 6, 1981.
Decided February 4, 1981.
*367 Before Judges BOTTER, KING and McELROY.
Blair R. Zwillman, Designated Counsel, argued the cause for appellant (Stanley C. Van Ness, Public Defender of New Jersey, attorney).
James T. O'Halloran, Deputy Attorney General, argued the cause for respondent (John J. Degnan, Attorney General of New Jersey, attorney).
The opinion of the court was delivered by KING, J.A.D.
This case presents the question whether representation of appellant and his two co-defendants by staff attorneys of the same local public defender's office, absent any showing of actual conflict of interest or possible prejudice, constituted a denial of appellant's state or federal constitutional rights to the effective assistance of counsel in a criminal proceeding. U.S. Const., Amend. VI; N.J. Const. (1947), Art. I, § 10; State v. Bellucci, 81 N.J. 531 (1980); R. 3:8-2. We conclude that such joint or dual representation of co-defendants by public defenders from the same local office, does not, without more, constitute a denial or impairment of their constitutional right to counsel.
Defendant-appellant Rogers and his co-indictees Kitt and Williams were indicted for armed robbery and illegal possession of revolvers in Fairlawn, Bergen County, on January 18, 1979. Appellant remained in jail in default of $25,000 bail pending trial.
On May 30, 1979 a so-called Green[1] hearing was held before Judge Schiaffo at appellant's Rogers request one week before the preemptory trial date. He there contended for the first time just a week before trial that representation of the three defendants by three public defenders from the same office created an irreconcilable conflict of interest. Rogers' deputy *368 public defender, Mr. LoLordo, voiced his client's objection to his representation  "basically it's [Rogers'] apprehension  he felt he had information vital to his defense and I think he was basically apprehensive about telling me because he thought co-counsel might find out what that information is and it might be used against him at the trial of the matter by the co-defendants." Rogers' concern was allegedly aroused because his co-defendant Williams had written an apologetic letter the week before to one of the victims of the crime. The prosecutor quickly agreed not to use the letter in the State's case, thereby obviating any Bruton[2] problem. The letter never became a factor at trial. Rogers' fears, insofar as his attorney LoLordo could communicate them, boiled down to the fact that he didn't trust his lawyer because of the public-defender association among defense counsel. As counsel put it: "He won't tell me what it is, but he feels that perhaps our files are accessible to everybody, that another attorney might see this information and use it against him in some manner."
The Law Division judge carefully outlined in defendant's presence each counsels' duty of confidentiality to each client whether a staff public defender, pool attorney for the public defender's office,[3] or a privately retained attorney.[4] The judge dismissed defendant's fear of his counsel's lack of professionalism as ungrounded, if not paranoid, and an insufficient reason for the appointment of pool counsel from the private bar, to be *369 paid by the public defender's office. Attorney LoLordo's application to withdraw as counsel was denied.
Before trial began on June 4, 1979 before Judge Huot, appellant's counsel sought an adjournment and again sought to withdraw because Rogers still refused to confide in him in preparation of a defense. LoLorda repeated Rogers' contention: "He felt it wasn't wise to tell me what the facts of the defense are because of the possible conflict. He felt that it would be against his interests to have the co-defendants aware of this information" because "we're three men in the same office." Judge Huot denied LoLordo's application concluding that "any lack of preparation is directly attributable to your refusal to cooperate with [counsel] in the preparation of the defense." Appellant then opted for LoLordo's continuing representation rather than self-representation when offered this choice by the judge. He was advised that no waiver of his currently-voiced objection would arise from this choice. Gratuitously, but understandably, the trial judge registered his impression that "as far as I'm concerned this entire picture is one of delay."
The case was tried before Judge Huot from June 5 through June 8, 1979. Appellant Rogers was found guilty on all three counts. The co-defendants Williams and Kitt did not testify and were granted mistrials because of improper remarks by the prosecution in summation impinging upon their rights to remain silent. A motion for mistrial by Rogers, who did testify, was denied because "the comments of the prosecutor did not harm him in any way."
At trial, the State presented proof that on Saturday, December 23, 1978 Santiago and Anna Nieves, who operated a meat market in the Bronx, were about to enter their home in Fairlawn with the day's receipts of $14,000 stuffed in a brown paper bag when they were set upon and robbed at gun point by the three defendants. Rogers and Kitt were seized by the police as they were leaving the Nieves house. Rogers had the bag of money, checks and food stamps in his hand when he was *370 captured. Williams was apprehended nearby five minutes later. Alert neighbors had called the police when suspicious activity about the Nieves house was observed.
At the trial neither Williams nor Kitt testified or called any witnesses in response to the overwhelming evidence of guilt. Appellant did testify. He stated that an unnamed relative of Nieves had given him directions to go to their home in Fairlawn and "pick up" $20,000. This person also gave appellant a loaded handgun, handcuffs and $1,000 remuneration for the task. Appellant gave Kitt and Williams $100 each to accompany him. Appellant actually admitted carrying two loaded handguns to the Nieves' home. Appellant claimed the three were voluntarily admitted to the victims' home where Mr. Nieves willingly gave him the bag of cash, checks and food stamps. Rogers said Mrs. Nieves thereafter began to protest her husband's conduct and attempted to reclaim the money. Appellant said he then pulled his handgun allegedly to "cool" Mrs. Nieves down. Rogers said "Mr. Nieves had held his hands out as to, you know, he wanted me to  it like he wanted to be handcuffed. So I handcuffed him and left." Despite instructions by the judge to do so, appellant would not, allegedly because of fear of reprisal against appellant's relatives in the Bronx, answer the prosecutor's question and name the relative of Nieves who had dispatched him to pick up the $20,000. Ultimately, therefore, appellant would not tell the judge and jury the defensive matter he alleged that he was afraid to tell his public defender.
Throughout the trial appellant's public defender, LoLordo, represented him with manifest competence and great vigor. We see no shred of support in the record to support any possible contention that counsel was ineffective; indeed, appellant advances no such contention as to trial effort. Obviously, the only witness appellant could have called to corroborate his testimony was his alleged employer whom he refused to identify to anyone. No one but appellant could be blamed for this flaw in the defense.
*371 Appellant's contentions here are three-fold: (1) this provision for defense counsel amounted to joint or dual representation within the meaning of R. 3:8-2, as amended effective September 10, 1979, and the recent pronouncement of our Supreme Court in State v. Bellucci, 81 N.J. 531 (1980); (2) this court should find an irrebuttable presumption of prejudice and reverse; and (3) an actual conflict in fact existed requiring reversal.
We have approached the questions posed on the basis that Bellucci is fully retroactive because the right to effective counsel is the core of the integrity of the truth-seeking process. See Kitchens v. Smith, 401 U.S. 847, 91 S.Ct. 1089, 28 L.Ed.2d 519 (1971), where the United States Supreme Court observed "as we have often noted, Gideon [v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)] is fully retroactive." Cf. State v. Howery, 80 N.J. 563, 569 (1979) (Franks v. Delaware not retroactive); State v. Czachor, 82 N.J. 392, 408-410 (1980) (decision abolishing Allen charge given limited retroactive effect). We also view this as essentially a state constitutional question. The United States Supreme Court recently held that a defendant must show an actual conflict before a presumption of prejudice sufficient to sustain a violation under the Sixth Amendment to the federal constitution would be indulged. Cuyler v. Sullivan, 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333, 347 (1980).[5] For the reasons to be explicated we find that no actual conflict existed, nor was actual prejudice demonstrated.
As our Supreme Court stated, the question in Bellucci, 81 N.J. at 541, was "whether our constitutional guarantee of effective counsel is fully satisfied when two lawyers who are partners separately represent criminal co-defendants." The court concluded that a partnership "must be considered as a single *372 attorney," id. at 543, in assessing an alleged constitutional violation. The court adopted a per se rule for such cases, stating "once a potential conflict exists, prejudice will be presumed." (Emphasis in original.) Ibid. Absent a carefully advised waiver in such instances, the court held that the constitutional right is violated and a new trial is required. Id. at 545. Such joint representation would only be countenanced in future cases after a R. 3:8-2 hearing and with judicial permission. See also State v. Land, 73 N.J. 24 (1977).
The opinion in Bellucci gave several reasons for the conclusion that representation by private partners would be equated to single-attorney representation. They were: (1) ready access to confidential information among members of a law firm, (2) shared economic interests of the entire firm, (3) and the erosion of public confidence if conduct proscribed for a lawyer could be performed by his partner. In a footnote, 81 N.J. at 542 n. 3, the court observed that: "These considerations have led courts to hold that the Sixth Amendment and a lawyer's professional responsibility are violated when two public defenders from the same office represent conflicting interests, even in the absence of the economic consideration present when a private firm is involved. (Emphasis added.)" Two authorities are cited for this statement: Borden v. Borden, 277 A.2d 89 (D.C.Ct.App. 1971); Turner v. State, 340 So.2d 132 (Fla. Dist. Ct. App. 1976). In Borden the District of Columbia Court of Appeals found an ethical violation existed where lawyers employed by the Neighborhood Legal Services Program represented opposing parties to a contested divorce proceeding, citing as authority in part New Jersey Advisory Committee on Professional Ethics, Opinion No. 155, 92 N.J.L.J. 9 (1969). In Turner the Florida Court of Appeals held that where "a conflict of interest between the defense of petitioner and one of the other co-defendants" in a burglary case existed, "separate attorneys within the public defender's office" *373 could not properly represent all.[6]Ibid. The Florida court stated: "We view the public defender's office of a given circuit as a `firm' within the discipline of this canon. [DR5-105]" Both Borden and Turner were cases of clear conflicts potentiating for real prejudice to clients.
We do not read this allusion in Bellucci so broadly as to require reversal of the conviction in the case before us. Although recognizing that the public defenders in this case worked out of the same office, we conclude that where there was no suggestion of actual conflict in the theory and presentation of the defense or any possibility of prejudice as the trial unfolded, there is insufficient reason to reverse this conviction. Nor has our research disclosed any case where the identity of counsel as co-public defenders from the same office alone automatically mandated reversal of a criminal conviction. The Supreme Courts of Arizona and Illinois have refused to apply a per se disqualification rule mandating reversal where no actual conflict or possibility of prejudice was demonstrated in joint or multiple public defender representations. People v. Robinson, 79 Ill.2d 147, 37 Ill.Dec. 267, 402 N.E.2d 157 (Sup.Ct. 1979); State v. Jelks, 105 Ariz. 175, 461 P.2d 473 (Sup.Ct. 1969).[7] Where an actual conflict or the possibility of harm has been shown, a conviction must be reversed and the courts of the land have been responsive to this necessity. See Commonwealth v. Westbrook, 484 Pa. 534, 400 A.2d 160 (1979); Turner v. State, supra, 340 So.2d 132; *374 Allen v. District Court, Colo., 519 P.2d 351 (Sup.Ct. 1974); Commonwealth v. Bracey, 224 Pa.Super. 294, 307 A.2d 320 (Sup.Ct. 1973); People v. Baxtrom, 61 Ill. App.3d 546, 18 Ill.Dec. 718, 378 N.E.2d 182 (Ct.App. 1978).
The record here is devoid of any actual conflict in contrast to the seminal case of Glasser v. United States, 315 U.S. 60, 72-75, 62 S.Ct. 457, 465-467, 86 L.Ed. 680 (1942), where defense counsel failed to cross-examine a prosecution witness whose testimony linked his client to the crime and failed to resist the presentation of arguably inadmissible evidence. Both omissions resulted from counsel's desire to diminish the jury's perception of the guilt of a co-defendant whom he also represented.
Deputy Public Defender LoLorodo owed allegiance only to appellant. The case did not involve sharply divergent degrees of culpability among the three defendants. The State's evidence-in-chief was virtually fungible and condemned defendants in common and on an equal basis. Each defense counsel was inclined to challenge the State's case with equal vigor. The allegedly incriminating letter written by Williams to the victims and which implicated appellant was never mentioned during the case. Neither co-defendant testified in contradiction to appellant, nor did they otherwise impede presentation of or cast doubt upon his unlikely defense. In fact, all three public defenders harmoniously adopted the same theory of defense. Appellant's asserted pretrial fear, apparently that co-defendants might try to minimize their culpability at his expense, could not have been effectively assuaged by a pool attorney or even by privately-engaged counsel. The prophylactic presumption of prejudice created by Bellucci does not overcome the reality that there was no prejudice to this defendant at his pre-Bellucci trial.
There is no reason to believe that appellant's conviction was in any sense "tainted by trial counsel's encumbered or diluted representation." Bellucci, supra, 81 N.J. at 547 (concurring opinion). To the contrary, faced with a difficult task, trial counsel performed with skill and zeal. We are constrained to *375 conclude, additionally, that this record strongly suggests that defendant was obdurate in his efforts to avoid a prompt trial in the hope that somehow the prosecution might go away in the future, and that his constitutional argument was, in this setting, a contrivance designed to avoid a proper reckoning.
Count three of the indictment charged defendant with possession of a revolver without a permit. (N.J.S.A. 2A:151-41(a)). The arresting officer's testimony established defendant's possession of the handgun. In order to negate the existence of a permit, an investigator from the County Sheriff's Firearms Identification Bureau was permitted, over objection, to read an affidavit by Sergeant Hendrikson of the New Jersey State Police Firearms Investigation Unit which recited that a diligent search of the office's records failed to disclose application for a permit by defendant or issuance of any to him. The affidavit was then placed in evidence.
Defendant contends that admission of the affidavit, in lieu of producing the live witness, violated his right of confrontation under the federal constitution. We disagree. Reasonable hearsay exceptions developed by state law do not violate the confrontation clause. Dutton v. Evans, 400 U.S. 74, 83, 91 S.Ct. 210, 216, 27 L.Ed.2d 213 (1970). See also Federal Rules Evidence, § 803(10); 5 Wigmore, Evidence (Chadbourn Ed. 1974) § 1678 at 868.
The plain language of Evid.R. 63(17) contemplates this type of proof:
Subject to Rule 64, a writing purporting to be a copy of an official record or of an entry therein is admissible to prove the content of that record providing the writing meets the authentication requirements of Rule 68. A writing made by the official custodian of the official records failure to find a record is admissible to prove the absence of a record in a specified office. [Emphasis added.]
Wigmore speaks of the common law rule precluding a custodian's certificate of a due search which disclosed nothing thusly:

*376 ... It will someday be reckoned as one of the most stupid instances of legal pedantry in our annals. The certificate of a custodian that he has diligently searched for a document or an entry of a specified tenor and has been unable to find it ought to be usually as satisfactory for evidencing its nonexistence in his office as his testimony on the stand to this effect would be; and accordingly by statute or court rule custodians' certificates of this sort have been expressly made admissible. [Wigmore, supra, § 1678 at 868.]
Moreover, the burden of going forward with proof on this issue falls upon the defendant, although the ultimate burden of persuasion rests on the State. State v. Hock, 54 N.J. 526 (1969), cert. den. 399 U.S. 930, 90 S.Ct. 2254, 26 L.Ed.2d 797 (1970); see also Ellison v. Housing Auth. of So. Amboy, 162 N.J. Super. 347 (App.Div. 1978) and Evid.R. 63(14).
Defendant's remaining appellant contentions are:
III. DENIAL OF DEFENDANT'S REQUEST FOR A CONTINUANCE CONSTITUTED AN ABUSE OF DISCRETION BY THE TRIAL COURT.
IV. THE CONDUCT OF SIDE-BAR CONFERENCES OFF THE RECORDED CONSTITUTED "PLAIN ERROR". (PLAIN ERROR, NOT RAISED BELOW).
V. THE TRIAL COURT'S CHARGE TO THE JURY WAS COERCIVE AND VIOLATED DEFENDANT'S RIGHT TO A FAIR TRIAL. (PLAIN ERROR, NOT RAISED BELOW).
VI. THE TRIAL COURT'S STATEMENT AS TO HIS ASSESSMENT OF DEFENDANT'S CREDIBILITY REVEALED PARTISANSHIP THAT DEPRIVED DEFENDANT OF A FAIR TRIAL. (PLAIN ERROR, NOT RAISED BELOW).
VII. THE GRANTING OF MISTRIALS AS TO DEFENDANTS JOINTLY-TRIED CO-INDICTEES, IN THE CIRCUMSTANCES OF THE INSTANT CASE, DEPRIVED DEFENDANT OF A FAIR TRIAL. (PLAIN ERROR, NOT RAISED BELOW).
VIII. THE TRIAL COURT'S CURTAILMENT OF DEFENDANT'S RIGHT TO PRESENT EVIDENCE IN HIS OWN BEHALF CONSTITUTED REVERSIBLE ERROR.
IX. REFERENCE BY THE PROSECUTOR TO THE DEFENDANT'S SILENCE AT THE SCENE OF THE CRIME CONSTITUTED UNFAIR COMMENT AND VIOLATED DEFENDANT'S RIGHT TO REMAIN SILENT. (PLAIN ERROR, NOT RAISED BELOW).
They are clearly without merit and require no discussion. R. 2:11-3(e)(2).
Affirmed.
NOTES
[1] State v. Green, 129 N.J. Super. 157 (App.Div. 1974).
[2] Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).
[3] A "pool" attorney is a member of the private bar separately retained by the Public Defender's Office "as needed" for the "proper performance of the duties of the office." N.J.S.A. 2A:158A-7(c) and (d).
[4] The Public Defender Act states:

All communications between the individual defendant and any person in or engaged by the Office of the Public Defender whether on a case basis or by contract shall be fully protected by the attorney-client privilege to the same extent and degree as though counsel has been privately engaged. [N.J.S.A. 2A:158A-12].
[5] In the majority opinion Justice Powell observed "that unconstitutional multiple representation is never harmless error." Ibid; see also Note, A Functional Analysis of the Effective Assistance of Counsel, 80 Col.L.Rev. 1053, 1071-1073 (1980).
[6] The defendants had apparently criminally implicated each other in statements made to the prosecutor before appointment of counsel. See Comment, 5 Fla.St.U.L.Rev. 492 (1977).
[7] See Commonwealth v. Grant, ___ Pa.Super. ___, 419 A.2d 1196 (Sup.Ct. 1980); Commonwealth v. Kauffman, 258 Pa.Super. 183, 392 A.2d 745 (Sup.Ct. 1978); People v. South, 70 Ill. App.3d 245, 387 N.E.2d 1294 (1979); People v. Pineda, 30 Cal. App.3d 860, 106 Cal. Rptr. 743 (Ct.App. 1973); People v. South, 70 Ill. App.3d 245, 26 Ill.Dec. 366, 387 N.E.2d 1294 (Ct.App. 1979); see also State v. Canery, 144 N.J. Super. 527 (App.Div. 1976), certif. den. 74 N.J. 259 (1977) (use by public defender of common investigator not per se a conflict or presumptive of prejudice).