Mary Helen **ROGERS**, et al., Plaintiffs,

v.

**UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT (HUD), et al., Defendants.**

No. C–81–3690 SC.

United States District Court, N.D. California.

Nov. 5, 1982.

---

San Francisco Neighborhood Legal Assistance Foundation, Phyllis E. Andelin, Arnold C. Ellis, San Francisco, Cal., for plaintiffs.

Joseph P. Russoniello, U.S. Atty., John Barg, Chief, Civ. Div., George Christopher Stoll, Asst. U.S. Atty., San Francisco, Cal., for federal defendant.

Joel Zeldin, Raymond M. Taketa, Dinkelspiel, Donovan & Reder, Leo E. Borregard, Redevelopment Agency of the City & County of San Francisco, Cal., San Francisco, Cal., for City and County of San Francisco.

## ORDER DENYING MOTION FOR CLASS CERTIFICATION

CONTI, District Judge.

Plaintiffs, six former residents of San Francisco's Western Addition, brought this action against the Secretary of Housing and Urban Development (HUD) and the San Francisco Redevelopment Agency (SFRA), on behalf of themselves and all those similarly situated. The complaint alleges that the defendants have violated various statutory, contractual, and equitable obligations owed to the plaintiffs and the plaintiff class

in connection with the "Western Addition Area 2 Urban Renewal Project" (A–2 project). Specifically, the complaint alleges that the SFRA agreed to construct and HUD agreed to fund, within the A–2 project area, HUD subsidized and low-rent public housing for 100% of the A–2 families and 48% of the A–2 individuals displaced by the A–2 urban renewal project. These promises were allegedly exchanged between the defendants as well as made directly to the plaintiffs and other members of their class, as a precondition to federal assistance for the project. These promises have allegedly been breached, and plaintiffs now seek to enforce them as both promisees and as third party beneficiaries. The complaint also alleges that the "site selection criteria" and "prototype cost formula" employed by HUD to evaluate new construction projects are being applied to the A–2 project (1) arbitrarily and capriciously, (2) in violation of 42 U.S.C. § 1437d, and (3) in an invidiously discriminatory manner. In an order entered October 22, 1982, this court denied defendants' motions for summary and for partial summary judgment. This matter is now before the court on plaintiff's motion to certify this action as a class action under Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure. For the reasons set forth below, plaintiffs' motion will be denied.

■ One of the prerequisites to certification of any class action under Rule 23 is a showing that the named class representatives will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a)(4). An important part of this requirement is a showing that counsel for the proposed class are qualified, experienced, and generally able to zealously conduct the proposed litigation. *Harriss v. Pan American World Airways, Inc.,* 74 F.R.D. 24, 42 (N.D.Cal. 1977); *see Fendler v. Westgate California Corporation,* 527 F.2d 1168, 1170 (9th Cir. 1975). This showing must be even more substantial when certification is sought under Rule 23(b)(2) rather than Rule 23(b)(3), because absent members of the class have no right to receive notice or to opt out of a

class action certified under Rule 23(b)(2). *Harriss v. Pan American,* 74 F.R.D. at 42.

Among the relief sought by plaintiffs in their complaint is an order enjoining the SFRA from transferring any land owned by the agency within the A–2 project area to developers of market-rate housing until the SFRA has fulfilled its alleged obligations to plaintiffs regarding the development of low-income housing. Thus any potential developer of market-rate housing within the A–2 project area who did not acquire title to SFRA owned land prior to the institution of this lawsuit has a financial interest that is directly adverse to the interest of the plaintiffs in this action and their proposed class. Were a potential developer to be associated with plaintiffs' counsel in this action, the resulting conflict of interest would undermine plaintiffs' ability to adequately represent their class and would therefore preclude class certification. The court finds just such an association to exist in this case.

Plaintiffs' counsel is the San Francisco Neighborhood Legal Assistance Foundation (SNLAF). Its executive director is Hiram E. Smith. Mr. Smith is also one of three partners in a joint venture called Bluebird Associates (Bluebird). In October of 1981, prior to the institution of this lawsuit, Bluebird purchased a lot in the A–2 area from the SFRA for the purpose of constructing eight market-rate condominiums. The conveyance was subject to the condition that construction on the property would begin within thirty days. The SFRA retained the right to re-enter the property and terminate all of Bluebird's right, title, and interest upon the failure of this condition. Construction was not begun within thirty days, and by letter dated June 21, 1982, the agency exercised its right of re-entry. On July 6, 1982, the agency filed a lawsuit in San Francisco Superior Court, seeking to quiet title in the property in favor of the agency. Thereafter, the SFRA and Bluebird, including Mr. Smith, entered into negotiations regarding possible relief from the default, dismissal of the quiet title action, re-negotiation of the sale price, and reconveyance of title to Bluebird.

■ Plaintiffs allege that a settlement has now been reached; defendants claim that negotiations are still continuing. Moreover, plaintiffs allege that Bluebird's failure to commence construction within thirty days as required was due to the agency's failure to deliver clear title to Bluebird, therefore the agency had no right to re-enter the property, thus title to the property never reverted to the agency. Regardless of whether title in the property ever actually reverted to the agency, however, the existence of a title dispute during the pendency of this action is sufficient to create a conflict between plaintiffs' counsel and the class they seek to represent.[1] Moreover, even though Mr. Smith may not have actively participated in this litigation, his conflict is nevertheless attributable to the SNLAF staff attorneys actually litigating this action under settled law. *See Borden v. Borden,* 277 A.2d 89, 91–92 (D.C.App. 1971); ABA Disciplinary Rule 5–105(D). Given this conflict of interest, and the court's heightened obligation to protect the interest of absent class members in class actions brought under Rule 23(b)(2), the court finds that the named plaintiffs cannot adequately represent their class. Class certification is therefore inappropriate.

Even if a conflict did not exist, the court sees little advantage in complicating this lawsuit by certification of a class. If HUD's site selection criteria or prototype cost formula are declared invalid as applied to the A–2 project, all of the members of

---

1. Plaintiffs argue that no conflict of interest problems are raised by Mr. Smith's participation in the Bluebird development because their complaint does not seek to enjoin transfer of land to "small" developers of market-rate housing such as Bluebird. The court finds that this argument is without merit. Nothing in plaintiffs' complaint distinguishes between "small" and "large" developers, and the court sees no principled basis for making such a distinction. Moreover, although Bluebird's development may be "small" in comparison to other developments, the value placed on it by Bluebird is over $840,000. This is certainly sufficient to raise a financial conflict of interest.

the proposed class will benefit regardless of whether the class is certified. Similarly, certification will not affect plaintiffs' ability to prove that defendants promised to fund and construct a certain amount of low-income housing within the project area, nor will it affect plaintiffs' ability to enforce those promises if they prove that those promises were made.[2] If enforced, the beneficiaries of such enforcement would include members of the proposed class regardless of whether the class is certified.

Although some courts have disagreed, *see, e.g., Vergara v. Hampton,* 581 F.2d 1281, 1284 (7th Cir.1978), the prevailing view appears to be that when denial of certification will not affect plaintiffs' ability to obtain any of the class-wide relief sought in their complaint, class certification is both unnecessary and inappropriate. *Grey v. International Brotherhood of Electric Workers,* 73 F.R.D. 638, 640 (D.D.C. 1977). *See, e.g., Martinez v. Richardson,* 472 F.2d 1121, 1127 (10th Cir.1973). Indeed, under such circumstances class certification would appear to be largely a formality, at least for the plaintiffs. *Galvan v. Levine,* 490 F.2d 1255, 1261 (2d Cir.1973). Given defendants' vigorous opposition to certification, the court finds that certification is inappropriate.

In accordance with the foregoing, it is hereby ordered that plaintiffs' motion for class certification be denied.

---

**2.** If plaintiffs prove that such promises were made, plaintiff must then prove that as individuals they are either promisees or third party beneficiaries of those promises in order to enforce them. A Rule 23(b)(2) class is not a legal entity apart from its individual members, and thus is incapable of being a contractual promisee. Certification will therefore not affect the enforceability of any promises made by the defendants.