**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1226-17T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JOSE CARRION, a/k/a
JOSE CARRISON

    Defendant-Appellant.

_____

        Submitted March 25, 2020 – Decided April 24, 2020

        Before Judges Fuentes, Mayer and Enright.

        On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 15-08-1788.

        Joseph E. Krakora, Public Defender, attorney for appellant (Gilbert G. Miller, Designated Counsel, on the brief).

        Theodore N. Stephens II, Acting Essex County Prosecutor, attorney for respondent (Barbara A. Rosenkrans, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Jose Carrion appeals from an August 28, 2017 judgment of conviction, focusing his arguments on the denial of his motion to suppress his subsequent warned statements made at the police station because he was not advised that his prior unwarned statements at the time of his arrest could not be used against him. Defendant also challenges various evidentiary rulings during the trial. In addition, he argues a judgment of acquittal on certain counts should have been granted. We affirm.

We summarize the relevant facts. The victim owed money to defendant purportedly for drugs purchased by the victim. Defendant, along with two other individuals, sought to collect the money from the victim. However, the victim was unable to repay defendant in full. According to the victim, defendant struck him in the face with a hard object and pointed a gun at the ground. The gun discharged and a bullet hit the victim's left ankle. The victim limped home and the victim's mother called 9-1-1.

When officers from the City of Newark Police Department arrived at the victim's home, the victim explained he heard a shot and felt pain. The victim was transported by emergency medical services to a nearby hospital for treatment. Police officers canvassed the area where the shot was fired and found a bullet fragment in the street near where the victim lived.

After receiving treatment, the victim went to the Newark police station and gave a statement. The victim said "Ariel" shot him, and provided Ariel's telephone number and address to the police. The police went to the address provided by the victim and spoke to defendant's wife. She gave the officers defendant's real name and confirmed defendant went by the nickname Ariel. She also provided defendant's telephone number, which was the same telephone number the victim gave to the police.

A few days later, the police showed defendant's photograph to the victim. The victim identified defendant as the shooter. Based on the victim's identification, the police obtained a warrant for defendant's arrest.

Around 6:00 a.m. on June 28, 2012, five police officers from the Newark Police Department knocked on the door of defendant's apartment to execute the arrest warrant. Defendant's wife opened the door, allowed the officers to enter, and said defendant was in the living room. The officers found defendant there, lying on a sofa bed. One officer stayed with defendant's wife while Detective William Maldonado and the others went into the living room and arrested defendant.

A-1226-17T1

Defendant claimed the officers told him that his children would be placed in the custody of the Division of Youth and Family Services (DYFS)[1] and his wife would be criminally charged if defendant did not reveal the location of contraband in the apartment. Defendant responded the officers would find something under the couch. The police found a black pouch containing a handgun, eighty-two oxycodone pills, fifty decks of heroin, bath salts, and $171. Defendant admitted to the police that the pouch belonged to him; however, he was not given Miranda[2] warnings prior to making this statement.

The police took defendant to the station after his arrest. Approximately six hours after his arrest, a different police officer, Detective Lydell James, advised defendant of his Miranda rights. Defendant waived his rights by signing the written waiver form and gave a digitally recorded statement. Defendant admitted he and two other individuals were owed money by the victim and the trio sought to collect their money. Defendant stated one of the individuals did not get the money he was owed, and that person shot the victim. Defendant also admitted the gun and drugs in the black pouch belonged to him.

---

[1] DYFS was renamed the Division of Child Protection and Permanency in June 2012. L. 2012, c. 16, effective June 29, 2012.

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

 A-1226-17T1

Defendant was charged and subsequently indicted with second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b) (count one); second-degree possession of a handgun for an unlawful purpose, N.J.S.A. 2C:39-4(a) (count two); fourth-degree aggravated assault by recklessly causing bodily injury to the victim with a deadly weapon, N.J.S.A. 2C:12-1(b)(3) (count three); second-degree possession of a firearm while committing a narcotics offense, N.J.S.A. 2C:39-4.1(a) (count four); fourth-degree unlawful possession of a firearm without a permit, N.J.S.A. 2C:39-10(a) (count five); three counts of third-degree possession of controlled dangerous substances, N.J.S.A. 2C:35-10(a) (counts six, nine, and twelve); three counts of third-degree possession of controlled dangerous substances with intent to distribute, N.J.S.A. 2C:35-5(a)(1) (counts seven, ten, and thirteen); and three counts of third-degree possession of controlled dangerous substances with intent to distribute within 1000 feet of a school, N.J.S.A. 2C:35-7 (counts eight, eleven, and fourteen).

Prior to trial, defendant moved to suppress his statements to the police at his apartment and at the police station. At the suppression hearing, the judge heard the testimony of Detectives Maldonado and James, defendant's wife, and defendant's oldest son.

Detective Maldonado was one of the arresting officers. According to Detective Maldonado, prior to his arrest, defendant was sleeping on a sofa bed in the living room and there was a black pouch on the sofa. Detective Maldonado saw narcotics protruding from the pouch, looked inside the pouch, and found a small weapon.[3] Detective Maldonado denied the officers conducted a search of the apartment other than to look for other occupants. Detective Maldonado testified defendant "was shaking" once the pouch was discovered and said the pouch belonged to him.

Defendant's wife testified she stood in the kitchen and saw the officers arrest defendant. She also heard an officer tell defendant that if he did not disclose the contraband in the apartment, the officers "were going to call [DYFS] and take my children, and also, they were going to get me involved in this case." As the officers looked for contraband, defendant's wife heard defendant say there was something behind the couch.[4] According to defendant's wife, the officers moved the couch and found a "black purse."

---

[3] The State's ballistics expert confirmed the bullet fragment found in the street near the victim's apartment came from the gun found in defendant's apartment.

[4] According to Detective Maldonado, the black pouch was found on the sofa bed. According to defendant's wife and son, the pouch was discovered under a different couch.

6

The judge also heard testimony from defendant's oldest son, who was fourteen or fifteen years old at the time of defendant's arrest. According to the son, he heard noise from the officers in the apartment and went into the living room to investigate. The son testified the officers looked "everywhere" in the apartment and found a bag under the couch. According to the son, the officers threatened that if defendant and his wife did not admit to ownership of the bag, DYFS would take the children.

Detective James was the officer who took defendant's digitally recorded statement at the police station after defendant's arrest. Detective James testified he did not speak with the arresting officers prior to speaking with defendant, did not make any promises to defendant prior to the recorded statement, and never threatened defendant or used any force or coercion in return for defendant giving the statement. Detective James further explained defendant never declined to give a statement, never refused to answer any questions, and never said he wanted to speak with an attorney. The detective affirmed that defendant did not appear to be under the influence of any substances. The detective explained he provided both verbal and written Miranda warnings to defendant in English

rather than Spanish.[5]  According to Detective James, defendant signed the Miranda waiver form at 11:50 a.m., approximately six hours after his arrest.

After hearing the testimony and reviewing the evidence, including the digital recording of defendant's statement to Detective James, the judge held that defendant's second warned statement at the police station was admissible because it was not the product of his earlier unwarned admission in the apartment.  The judge found the detectives' testimony more credible than the testimony offered by defendant's wife and son.  She determined the testimony proffered by defendant's wife was "partially credible" and the testimony of his son was "mostly incredible."  She found their testimony "lack[ed] . . . corroborating evidence" and presented "contradictory evidence" to each other as to significant details, such as who was in the apartment when defendant was arrested and where the pouch was found.

The judge found Detective James credibly testified he was not involved in the shooting investigation or defendant's arrest.  She accepted Detective James's testimony that "he did not make any promises or threats" to defendant

---

[5]  Defendant spoke Spanish, although he understood English according to his family.

A-1226-17T1

or "exercise any force or coercion in connection with [defendant's] statement" and was unaware of any other officers doing so.

Based on the testimony of Detective James and the digital recording, the judge found defendant never declined to speak with the police, asked the police to stop questioning him, or requested to speak with an attorney. As part of the recorded interview, the judge heard Detective James explain the Miranda warnings to defendant and provide the written version of the warnings to defendant for his review. She found defendant did not indicate any difficulty understanding the verbal or written warnings nor did he demonstrate "any signs of impairment or intoxication."

The judge concluded defendant was in custody at the time of his arrest in the apartment but was not given any Miranda warnings prior to the police interrogating him. Giving defendant's wife and son "the benefit of the doubt," the judge found at least one officer made an inquiry regarding contraband in the apartment and told defendant his children would be taken by DYFS and his wife would be criminally charged if defendant did not disclose the location of the contraband. Based on her findings, the judge suppressed defendant's unwarned statements to the police while in the apartment.

However, the judge reached a different conclusion as to the digitally recorded statement given by defendant to Detective James six hours later. She determined defendant "received proper administration of <u>Miranda</u> rights" from Detective James.

The judge explained "[b]oth the CD and the transcript show that [defendant] was advised of his <u>Miranda</u> rights and that . . . is also corroborated by Detective James's testimony." In her review of the digital recorded statement, the judge determined defendant knowingly and intelligently waived his constitutional rights. She also found defendant's English "clear and comprehensive" and that defendant could be heard on the digital recording "speaking clearly and calmly." In the recording, defendant told Detective James that he understood the written waiver form after reading the document.

The judge also considered defendant's age, thirty-six years old at the time of his arrest, his two years of a college education, as well as his statements regarding the ability to read and understand English. Further, the judge held defendant's "previous encounters with law enforcement" supported the "voluntariness of the defendant's waiving the <u>Miranda</u>." The judge did not find defendant was threatened, coerced, or pressured into giving the statement to Detective James. She also concluded defendant "[did] not exhibit any form of

10

<span style="float:right">A-1226-17T1</span>

distress in the audio recording. His voice is calm. He is clear, articulate. He sounds like he is alert. He, frankly, sounds like he is very comfortable throughout the statement."

Because the second Mirandized statement by defendant was six hours after his earlier unwarned statement, the judge found "the second statement was a separate event from the statement allegedly made by [defendant]" in the apartment. Based on the testimony and evidence, the judge determined "the second statement . . . was given after [defendant] knowingly, voluntarily, and intelligently waived his Miranda rights." The judge concluded "defendant's Miranda waiver . . . was knowing . . . that his confession was voluntary and not the product of coercion in light of the totality of the circumstances" and therefore denied defendant's motion to suppress his second statement.

The case was tried before a jury over five days. During the trial, defense counsel objected to the State's submission of an affidavit from an individual employed by the Firearms Investigation Unit of the Department of Law and Public Safety. According to that affidavit, the employee searched the relevant records and found no record of defendant applying for, or having been issued, a permit to purchase or carry a firearm. Defense counsel also objected to

testimony from the surveyor for the City of Newark, confirming the location of defendant's apartment within 1000 feet of a school.

At the conclusion of the evidence, the jury found defendant guilty on all counts except for counts thirteen and fourteen related to the possession of bath salts. Defendant was sentenced to an aggregate term of eighteen years in prison with a ten-year period of parole ineligibility.

On appeal, defendant raises the following arguments:

POINT I

> THE FAILURE OF THE POLICE TO ADMINISTER MIRANDA WARNINGS TO DEFENDANT UPON HIS ARREST AT HIS RESIDENCE BEFORE ENGAGING IN COERCIVE INTERROGATION WHICH ELICITED INCRIMINATING ADMISSIONS, WHICH REQUIRED THE SUPPRESSION OF THOSE ADMISSIONS, PRECLUDED THE EFFECTIVENESS OF MIRANDA WARNINGS PRECEDING A SECOND STAGE OF INTERROGATION AT THE POLICE STATION AND REQUIRED THE EXCLUSION OF DEFENDANT'S RESPONSES AT THE STATION UNDER THE FIFTH AMENDMENT AND HIS STATE LAW PRIVILEGE AGAINST SELF-INCRIMINATION.

POINT II

> THE STATE'S PROOFS ON COUNTS ONE AND FIVE THAT DEFENDANT DID NOT HAVE A PERMIT TO POSSESS THE HANDGUN AT ISSUE IN THIS CASE VIOLATED THE SIXTH

AMENDMENT'S PROSCRIPTION AGAINST
TESTIMONIAL HEARSAY AND THE STATE
EVIDENCE RULE REQUIRING THAT NON-
STIPULATED EVIDENCE BE PRESENTED AT
TRIAL THROUGH WITNESSES UNDER OATH.

POINT III

THE STATE'S EVIDENCE ON THE SCHOOL ZONE
CONVICTIONS IN COUNTS EIGHT AND ELEVEN
WAS INADMISSIBLE HEARSAY, AND ITS
RELIABILITY WAS NOT SUFFICIENTLY
ESTABLISHED TO SUPPORT ITS ADMISSION.
(Partially raised below.)

POINT IV

THE COURT SHOULD HAVE GRANTED
DEFENDANT'S APPLICATION FOR A JUDGMENT
OF ACQUITTAL ON COUNTS ONE, FIVE, EIGHT
AND ELEVEN OF THE INDICTMENT.

We apply a highly deferential standard of review to a trial judge's determination on a motion to suppress. State v. Gonzales, 227 N.J. 77, 101 (2016). We will uphold a "judge's factual findings so long as sufficient credible evidence in the record supports those findings[.]" Those factual findings are entitled to deference because the motion judge . . . has the 'opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" Ibid. (citations omitted) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)).

13

Defendant contends the failure of the arresting officers to apprise him of his Miranda rights prior to his initial statements in the apartment precluded the admission of his subsequent warned statements at the police station. Defendant further argues that Detective James was required to advise him at the time of the digitally recorded statement that defendant's prior statements in the apartment could not be used against him. According to defendant, his subsequent statement regarding ownership of the gun and drugs should have been suppressed under the "cat-out-of-the-bag" doctrine. See United States v. Bayer, 331 U.S. 532, 540 (1947) (holding "after an accused has once let the cat out of the bag by confessing, no matter what the inducement, he is never thereafter free of the psychological and practical disadvantages of having confessed. He can never get the cat back in the bag."). We disagree.

In State v. O'Neill, 193 N.J. 148 (2007), our Supreme Court addressed an interrogation involving an initial unwarned confession and a later warned confession. The Court held "the admissibility of post-warning statements will turn on whether the warnings functioned effectively in providing the defendant the ability to exercise his state law privilege against self-incrimination." Id. at 180-81.

Thus, when determining whether to admit post-<u>Miranda</u> warning statements, courts should consider:

> (1) the extent of questioning and the nature of any admissions made by defendant before being informed of his <u>Miranda</u> rights;
>
> (2) the proximity in time and place between the pre- and post-warning questioning;
>
> (3) whether the same law enforcement officers conducted both the unwarned and warned interrogations;
>
> (4) whether the officers informed defendant that his pre-warning statements could not be used against him; and
>
> (5) the degree to which the post-warning questioning is a continuation of the pre-warning questioning.
>
> [<u>Id.</u> at 181.]

"In a two-step interrogation case, courts must view the totality of the circumstances in light of the relevant factors and then determine whether the unwarned questioning and admissions rendered the <u>Miranda</u> warnings ineffective in providing a defendant the opportunity to exercise the privilege." <u>Id.</u> at 181-82.

Several of the <u>O'Neill</u> factors weighed in favor of admitting defendant's digitally recorded statement to Detective James. The post-warning questioning

of defendant occurred six hours after the pre-warning questioning. Different law enforcement officers conducted the unwarned and warned interrogation of defendant. Because Detective James had no contact with the arresting officers prior to questioning defendant at the police station, the post-warning questioning was not a continuation of the pre-warning questioning.

The only missing factor was informing defendant that his pre-warning statement could not be used against him. However, the failure to give that instruction did not render defendant's post-Miranda statement inadmissible. The O'Neill factors are not applied formulaically as the Court expressly declined to create a "bright-line rule" for determining whether unwarned statements rendered subsequent Miranda warned statements "ineffective in providing a defendant the opportunity to exercise the privilege." O'Neill, 193 N.J. at 181-82. Here, given the totality of the circumstances and applying the O'Neill factors, the facts tip in favor of admitting defendant's subsequent statement.

Based on our review of the record, defendant understood his rights and voluntarily waived those rights prior to giving his statement to Detective James. Thus, we affirm the denial of defendant's motion to suppress his post-Miranda warned statement admitting ownership of the gun and drugs.

A-1226-17T1

We next consider defendant's challenge to two evidentiary rulings the judge made during the trial. We review evidentiary rulings by a trial judge under an abuse of discretion standard. State v. Gorthy, 226 N.J. 516, 539 (2016).

We discern no legal basis to disturb the judge's evidentiary ruling regarding the State's proffer of a no permit affidavit. The affidavit was properly admitted under the absence of a public record exception to the hearsay rule. N.J.R.E. 803(c)(10); see also State v. Rogers, 177 N.J. Super. 365, 375 (App. Div. 1981) (allowing an affidavit by an officer of the State Police Firearms Identification Unit indicating that there was no record of issuance of, or application for, a permit by defendant to "negate the existence of a permit."). The affidavit was a valid self-authenticating document under N.J.R.E. 902(k). It bore the raised seal of a governmental agency and was signed by an employee acting in his official capacity. Even if the affidavit was admitted in error, such an error was harmless as defendant admitted he received the gun from a friend and never registered the weapon.

Nor did the judge err in admitting the testimony of the City's surveyor, locating defendant's apartment within 1000 feet of a school. While the surveyor did not create the maps, his testimony was based on his extensive experience reviewing the City's maps. He testified the City's maps were accurate and

reliable within a few feet plus or minus. See N.J.S.A. 2C:35-7(f) (allowing the State to introduce other testimony to establish distance); see also State v. Thomas, 132 N.J. 247, 256 (1993) (allowing an experienced police officer to testify that the defendant possessed drugs within 1000 feet of a school without an authenticating ordinance or resolution in support of the map upon which the officer relied). Nor did defendant present evidence that contradicted the surveyor's 1000-foot calculation.

Because we discern no abuse of discretion regarding the judge's evidentiary rulings on these matters, we need not address defendant's argument that the judge erred in denying his application for a judgment of acquittal on counts one and five (unlawful possession of a gun) and counts eight and eleven (possession of drugs within 1000 feet of a school).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

18

A-1226-17T1