THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. HUGH EDWARD WALTON, Defendant-Appellant.

Fourth District   No. 14808

Opinion filed December 15, 1978.—Rehearing denied January 10, 1979.

914

WEBBER, J., dissenting.

Richard J. Wilson and Donald T. McDougall, both of State Appellate Defender's Office, of Springfield, for appellant.

Ronald Dozier, State's Attorney, of Bloomington (Robert C. Perry and Robert J. Biderman, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

The defendant, Hugh Edward Walton, was charged with the offense of murder in connection with the shooting death of James Tribbett on September 22, 1967. He was tried for that offense at a trial that commenced in May 1968, resulting in a conviction. The defendant was sentenced to a term of 16 to 40 years' imprisonment.

On direct appeal, this court affirmed the conviction but remanded for correction of an error with reference to the date of commencement of the consecutive sentence (*People v. Walton* (1969), 118 Ill. App. 2d 324, 254 N.E.2d 190). In the original trial and upon the direct appeal, the defendant was represented by the then public defender of McLean County. In 1972, the defendant initiated, on a *pro se* basis, post-conviction proceedings, and ultimately the circuit court of McLean County appointed the then public defender of that county to represent the defendant in the post-conviction proceedings.

A 1975 petition for post-conviction relief contains allegations that the defendant was denied his constitutional right to effective assistance of counsel at trial, and, indeed, upon the direct appeal. Because of the allegation that appointed counsel failed to raise circumstances for consideration by the trial court which may have warranted his conviction of the lesser offense of voluntary manslaughter, in general, the petition constitutes a substantial attack upon the representation afforded at trial. Since counsel on the direct appeal was the same as trial counsel, competency of the representation received at trial was not an issue on direct appeal.

In this post-conviction proceedings, the trial court considered the record of the original trial, and, in addition, heard and considered the testimony of Patricia Huffman and William Hines. Patricia Huffman had been a State's witness at the earlier trial. In the post-conviction

proceeding, she testified that the decedent Tribbett had raped her sometime in the afternoon on the date of the killing and that she had spoken to the State's Attorney's office about the rape prior to the initial trial but she did not recall discussing the incident with the public defender. William Hines, who had likewise been a State's witness in the initial trial, also testified in the post-conviction proceedings.

Aside from the merits of the post-conviction proceedings, defendant now contends that the trial court committed reversible error and denied him the unfettered assistance of counsel in support of his post-conviction petition when it appointed the public defender of McLean County to pursue the post-conviction proceeding. This contention is based upon the fact that the primary allegation of violation of constitutional rights was that the public defender of McLean County had been inadequate and ineffective in assisting the defendant in the initial proceeding. We are persuaded that the trial court should have appointed counsel other than the public defender.

■■ In *People v. Smith* (1967), 37 Ill. 2d 622, 230 N.E.2d 169, the Illinois Supreme Court, while recognizing that there is no absolute right to appointment of non-public-defender counsel in post-conviction proceedings, noted:

> "We have previously recognized the disadvantages, both to petitioner and the public defender's office, in having a representative from that office present petitioner's cause when his petition is based in part upon charges of incompetent representation afforded him at trial by the public defender. (*People v. Ashley.*) This circumstance clearly confronts the public defender's office with a conflict of interest since, on one hand, its natural inclination would be to protect its reputation by defending against the charges of incompetency while, on the other hand, its duty as an advocate is to aid petitioner in establishing the veracity of these charges. This conflict-of-interest situation should be avoided and the petitioner be appointed counsel other than the public defender to represent him at a new hearing on his petition." 37 Ill. 2d 622, 624, 230 N.E.2d 169, 170.

In *People v. Slifer* (1973), 15 Ill. App. 3d 136, 304 N.E.2d 153, we were confronted with a case in which the public defender appointed for the post-conviction proceeding was sought to be removed by the defendant for the reason that the defendant had attacked the competency of the prior representation of the same public defender office. In *Slifer*, we found no error and distinguished *Smith*. We did so upon the factual basis that the defendant had waived any objection to the representation upon learning that a different attorney was then the county public

defender. The waiver found in *Slifer* is absent in this case and this case is not distinguishable from *Smith*. The disposition is commanded by *Smith*.

██ Accordingly, the judgment of the circuit court of McLean County denying post-conviction relief is vacated and this cause is remanded to that court with directions to appoint counsel for the defendant other than the public defender, and for further proceedings on the post-conviction petition.

Reversed and remanded with directions.

GREEN, J., concurs.

Mr. JUSTICE WEBBER, dissenting:

I respectfully dissent and vehemently object to what in my opinion is an unwarranted and unwise extension of the per se conflict-of-interest rule. That rule, unless carefully controlled, will become nothing less than a Declaration of Indulgences to every criminal defendant who is dissatisfied with the result of his trial and appeal and seeks to fasten the blame upon his lawyer.

In *Smith*, cited in the plurality opinion, the supreme court did nothing more than say that the trial court should have sustained the defendant's objection. In fact, the court was careful to limit the decision to "the circumstances present here." (*Smith*, 37 Ill. 2d 622, 624, 230 N.E.2d 169, 170.) In *Slifer*, distinguished in the plurality opinion, this court pointed out that the defendant first objected to the public defender and thereafter acquiesced in the appointment, in effect, withdrawing the objection.

The cardinal premise, in my view, of both *Smith* and *Slifer* is that there is a burden on the defendant to take positive action of some kind, presumably an objection, at the time of appointment; he cannot in all fairness await the outcome and then lodge a retroactive plea of per se conflict.

The proposition was put succinctly more than 300 years ago by John Locke in his Second Tract on Government:

> "As to the obligation of subjects, it must be understood that the power of the magistrate is on the one hand regulatory and on the other coercive, to which corresponds a double obligation, (i) the obligation to act, (ii) the obligation, if I may put it thus, to suffer; or, as it is commonly put, an active and a passive obedience."[1]

The record in the case at bar is barren of any objection, or other

---

[1] In the Lockean context, "magistrate" refers either to the sovereign or to parliament—in short, the governing authority. However, the principle remains the same.

action, by the defendant to indicate displeasure with his counsel, and this is true even though there was a full evidentiary hearing on the petition with the defendant presumably present. In this respect, it is quite unlike a hearing on a motion to dismiss which is generally held in the absence of the defendant and with the consequence that he has no opportunity to object.

Moreover, the record is equally barren of any evidence that the successor public defender either (1) rejected out of hand all of the policies and actions of his predecessor, or (2) was ready to defend to the death each and every one of them. To say that one attorney will blindly adopt everything that another did is an assumption that flies in the face of human experience and the nature of lawyers. If it were true, Chief Justice Warren would simply have parrotted Chief Justice Hughes.

Once the principle of the majority is accepted (*i.e.*, that protecting the reputation of the office is of more importance than representing the client), the degrees admit of no limit. Any former public defender, any former State's Attorney or any former assistant of either would be barred from areas of criminal practice. And what of a sitting judge who may have been a defender or prosecutor in the past? Will he be disqualified from hearing post-conviction petitions because of his former association?

In the most frequently cited cases on the question of conflict of interest, that interest was apparent and real. (*E.g., People v. Stoval* (1968), 40 Ill. 2d 109, 239 N.E.2d 441 (attorney representing both defendant and victim); *People v. Kester* (1977), 66 Ill. 2d 162, 361 N.E.2d 569 (attorney acting as prosecutor and defender in the same case); *People v. Coslet* (1977), 67 Ill. 2d 127, 364 N.E.2d 67 (attorney representing both defendant and estate of victim-husband).) The purported conflict in the case at bar is far removed from these situations.

In the absence of any objection and in the absence of any evidentiary record of conflict, I would not create one based on speculation. I would affirm the trial court.