THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GARY LEE SOUTH, Defendant-Appellant.

Fourth District   No. 14539

Opinion filed April 18, 1979.

WEBBER, J., concurring in part and dissenting in part.

Richard J. Wilson and Jeffrey D. Foust, both of State Appellate Defender's Office, of Springfield, for appellant.

C. Joseph Cavanagh, State's Attorney, of Springfield (Robert C. Perry, of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE MILLS delivered the opinion of the court:

The public defender represented defendant.

Conflict of interest under these facts?

No—we affirm.

South contends on appeal that he was denied the effective assistance of counsel because he was represented by the Sangamon County Public Defender while his alleged accomplice (who pleaded guilty and testified against South) was represented by an Assistant Public Defender of Sangamon County. Because this representation gave the appearance of a conflict of interest, the defendant maintains his conviction must be reversed.

We disagree.

## CONFLICT OF INTEREST

■■ In Sangamon County there is a designated "chief public defender," but he does not exert any supervisory control over the other eight assistant "public defenders" other than assigning the days that a public defender will be appointed the cases of the defendants arraigned on that day. He interviews the applicants for the assistant public defender positions and gives his recommendation to the presiding judge of the Criminal Division, but the circuit judges vote on who will receive the appointment to the positions. At one time he required the assistant public defenders to file reports indicating the number of cases they were appointed for each month, the amount of time spent on each case, and the disposition of each case, but this practice was stopped.

The public defenders in Sangamon County are solely responsible for their own cases. They do not appear for each other, discuss cases among each other, or exchange files with each other. Cases involving multiple defendants and public defenders are handled in the same fashion as cases in which private counsel is appointed. None of the public defenders have professional relationships with each other as they maintain their own private offices. They use their own respective private law firm stationery and do not have stationery designating themselves as public defenders. The only thing the public defenders share is their title and the services of an investigator. It seems apparent, then, that the office of the Sangamon County Public Defender is—in fact—a *decentralized* office.

In *People v. Spicer* (1978), 61 Ill. App. 3d 748, 378 N.E.2d 169, our sister court held that a *per se* conflict of interest existed in the representation of defendant and a co-defendant by two separate assistant public defenders in a public defender's office. The defendant's counsel

was charged with a commitment to the co-defendant by virtue of his affiliation with the office of the public defender. The court stated that the case must be viewed as though both defendants were represented by single counsel because when the public defender is appointed for an indigent in a criminal case, it is the office of the public defender that is appointed. The assistant public defenders discharge the duties and obligations of the public defender, but the public defender remains responsible for the acts and conduct of his assistants. The court also noted that representation of defendants with possible conflicting interests by separate assistant public defenders casts a shadow on the loyalty of counsel.

However, the evidence in the case at bench clearly indicates that the defendant received vigorous representation by his counsel without the hint of any division of loyalty. The assistant public defenders were independent from the public defender and each other. They shared neither offices nor information and were responsible for only their own cases. Not only were they decentralized, they were apparently related in name only.

Defendant asserts that the use of the common investigator by the public defenders and his use of cards identifying himself as the investigator of the office of the Sangamon County Public Defender creates the appearance of a single office. We view this as a *de minimis* factor. Although the Illinois Supreme Court in *People v. Knippenberg* (1977), 66 Ill. 2d 276, 362 N.E.2d 681, found it was error for the State to use privileged communications between the defendant and the defense investigator, there was no breach of the attorney-client privilege in this case. No actual conflict of interest arose regarding the use of the investigator since South's attorney used the investigator to determine whether the co-defendant was going to testify against South and the co-defendant's attorney did not use the investigator for any purpose whatever. Furthermore, the investigator only reported to the public defenders who asked for information and then only that information which they had requested. We conclude that the investigator's limited involvement in this case did not create an appearance of conflict.

The dissenting justice contends that the "centralized" versus "decentralized" distinction is nonexistent. Although we recognize that the distinction was not created by the legislature, we are examining the office as it is and not as it should be. In fact, the Sangamon County Public Defender's Office which manifests the distinction could well be operating contrary to the law. However, the legality of that office is not presently before this court. The only matter that is before us and is at issue—raised for the first time on appeal—is whether South was denied the effective assistance of counsel.

The docket order recites "Attny. James P. Fox appointed as counsel for defendant South." The appointee was a duly licensed attorney and an assistant public defender. If his appointment as an assistant public defender was not valid, that would further indicate his independence. Since, in our view, neither an actual conflict of interest nor an appearance of conflict exists in this case, that issue is answered in the negative. By so holding we are not advocating the reorganization of public defenders' offices to a structure contrary to law, but merely determining that South received proper independent representation.

## EXCESSIVE SENTENCE

South also contends his sentence should be reduced since it is more severe than those received by his two accomplices who pleaded guilty. While the exercise of the right to trial by jury should not result in a more severe punishment than that received by one similarly situated who pleads guilty, it is the *reason* for the disparity, not the disparity itself, that determines whether the sentence was improper. (*People v. Martin* (1970), 47 Ill. 2d 331, 265 N.E.2d 685.) It also must be clear that the sentence was improperly imposed. *People v. Sivels* (1975), 60 Ill. 2d 102, 324 N.E.2d 422.

■ We conclude that the sentence disparity in this case was justified. The 18-year-old South was sentenced to 3 to 10 years' imprisonment, co-defendant David Freligh was sentenced to 1 to 3 years, and co-defendant Ronald Gustin received a sentence of probation. The sentencing judge noted he was aware of the different sentences imposed, but stated that in sentencing he considered both the nature of the offense and the nature and character of the person who committed the offense. As a juvenile, South had committed two burglaries, one felony theft, two misdemeanor thefts, shoplifting, and fleeing a police officer. South's adult record included burglary and assault. On the other hand, David Freligh had four misdemeanor convictions involving theft and deceptive practices, while Ronald Gustin's only prior conviction was for retail theft. The differences in the criminal records of the defendants indicate the more severe sentence imposed on South was not an abuse of the trial court's discretion.

Affirmed.

GREEN, J., concurs.

Mr. JUSTICE WEBBER, concurring in part and dissenting in part:
I concur with the majority that the sentence imposed is not excessive. I differ sharply on the question of conflict of interest and respectfully dissent on that issue.

The majority's emphasis on "centralized" versus "decentralized" natures of the public defender's office is a spurious and nonexistent distinction.

The office of Public Defender is a statutory creation (Ill. Rev. Stat. 1977, ch. 34, par. 5601 *et seq.*) and the statute is mandatory and plain in its meaning.

Section 1 of "An Act in relation to the office of Public Defender" (Ill. Rev. Stat. 1977, ch. 34, par. 5601) creates the office and designates that a "person," not "persons," shall be appointed to it; section 2 (Ill. Rev. Stat. 1977, ch. 34, par. 5602) mandates the county ("shall") to make the appointment.

Section 6 (Ill. Rev. Stat. 1977, ch. 34, par. 5606) confers on the public defender the power to appoint assistants who shall serve at his pleasure. There is no power in the circuit judges to appoint assistants, only to determine their number. As an appointee of a county board, a public defender is part of the executive branch of the government and his discretionary powers may not be usurped by the judiciary. In this respect he is much like the State's Attorney. Compare *People v. Stinger* (1974), 22 Ill. App. 3d 371, 373, 317 N.E.2d 340, 342, wherein the court said, "The State's Attorney's office is a part of the executive branch. It is clear that the judicial department may not take as its own those discretionary powers vested in an executive officer."

It is thus clear that the organization of the public defender's office in Sangamon County is contrary to law. The statute contemplates a single office, staffed with as many assistants as the public defender may convince the circuit judges he requires, but appointed by him. In this sense, they are all bound together with a single loyalty and a single purpose, just as all assistant State's Attorneys are bound to the State's Attorney.

This court should not tolerate subterfuge as a means of avoiding a difficult problem.

In cases of conflict of interest, the statute is equally clear:

"[I]f the defendant requests counsel other than the Public Defender and the court finds that the rights of the defendant will be prejudiced by the appointment of the public defender, the court shall appoint as counsel a licensed attorney at law of this State * * *." (Ill. Rev. Stat. 1977, ch. 38, par. 113—3(b).)

The distinction between the public defender and what is known in the criminal argot as a "bar association attorney" is sharply drawn. The defendant gets one or the other, not a hybrid.

I am well acquainted with the difficulties that the existing system creates for trial courts, if they follow the statute, but the solution lies either with the legislature or with our supreme court. The majority

250

opinion in this case only invites all other counties to reorganize their public defender offices along the lines of Sangamon County. It is "the-emperor-has-no-clothes" solution.

In this case, the defendant was represented by one who purported to be an assistant public defender but now is claimed not to be such because his appointment was contrary to statute.

Although I am extremely reluctant to find additional *per se* conflicts of interest, as indicated in my dissent in *People v. Walton* (1978), 66 Ill. App. 3d 913, 383 N.E.2d 1000, *appeal allowed* (1979), ___ Ill. 2d ___, under the circumstances here exhibited, I would reverse and remand for a new trial with a "licensed attorney of this state," not connected in any fashion with the public defender's office, as counsel.