1076

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MU-
RIEL D. BLACK, Defendant-Appellant.—THE PEOPLE OF THE STATE
OF ILLINOIS, Plaintiff-Appellee, v. MELVIN DIXON, Defendant-Appel-
lant.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
WILLIE C. ROBY, Defendant-Appellant.—THE PEOPLE OF THE STATE
OF ILLINOIS, Plaintiff-Appellee, v. JIMMY DRUMMOND, Defendant-Ap-
pellant.

Fifth District Nos. 5—85—0727, 5—86—0020, 5—86—0031, 5—86—0199
cons.

Opinion filed April 15, 1987.

Daniel M. Kirwan and Larry R. Wells, both of State Appellate Defender's Office, of Mt. Vernon, for appellant Willie C. Roby.

Daniel D. Yuhas and Judith L. Libby, both of State Appellate Defender's Office, of Springfield, for appellant Jimmy Drummond.

Daniel D. Yuhas and Gary R. Peterson, both of State Appellate Defender's Office, of Springfield, for appellants Muriel D. Black and Melvin Dixon.

John Coady, State's Attorney, of Taylorville, John Baricevic, State's Attorney, of Belleville, and John R. Clemons, State's Attorney, of Murphysboro (Stephen E. Norris, Kim G. Noffke, Debra A. Buchman, and Raymond F. Buckley, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE JONES delivered the opinion of the court:

In each of these appeals, the office of the State Appellate Defender (O.S.A.D.) claims the existence of a conflict of interest which precludes it from providing effective representation. O.S.A.D. seeks

leave to withdraw in each case and requests appointment of counsel outside the agency. The State contests the claim that O.S.A.D.'s representation places it in conflict with defendants' respective interests and suggests that if a district office of O.S.A.D. is confronted with an actual conflict of interest in any of these appeals, the appropriate remedy would be to transfer the appeal to a different district office rather than appoint outside counsel at great public expense. The various motions for leave to withdraw and objections thereto have been consolidated for opinion in view of the recurrence of the conflicts issues presented for our consideration.

■ In No. 5—86—0031, a jury in the circuit court of Christian County found defendant, Willie C. Roby, guilty of three counts of an offense relating to a motor vehicle (Ill. Rev. Stat. 1985, ch. 95½, pars. 4—103(a)(1), (3), (4)) and one count of vehicle theft conspiracy (Ill. Rev. Stat. 1985, ch. 95½, par. 4—103.1). The trial court only entered judgment on the three counts of an offense relating to a motor vehicle and sentenced defendant to concurrent prison terms of four years on each count, a fine of $500 plus costs, and restitution in the amount of $700 as to count II only. Roby filed a timely notice of appeal and O.S.A.D.'s fifth district office was appointed as appellate counsel. At the time of its appointment, that office also represented a codefendant, Claudius Brooks, in a separate appeal (No. 5—86—0139). Brooks was charged by information with the same offenses but pleaded guilty to the conspiracy charge in return for a dismissal of the other charges. The criminal charges filed against Roby and Brooks stem from a purchase of a 1977 gray Camaro, the exchange of the gray Camaro's vehicle identification number with that of a stolen 1977 red Camaro, and the sale of the red Camaro to an innocent third party. O.S.A.D. moves to withdraw as Roby's appellate counsel due to the antagonistic position taken by Brooks in his appeal. O.S.A.D. contends that effective representation of Roby requires that a reasonable doubt argument be raised which will cast him as an innocent companion of Brooks, who was the actual culprit. O.S.A.D. argues that this appellate strategy will place it at odds with its zealous representation of Brooks, who also maintains a theory of innocence on appeal. To alleviate this conflict of interest, which O.S.A.D. regards as an actual conflict, it moves for leave to withdraw as counsel on appeal and appointment of counsel outside its agency.

The State asserts in its objection to the motion to withdraw that the reasonable doubt issue alluded to by O.S.A.D. will not create a conflict of interest with respect to its representation of Brooks. In support of this assertion, the State cites several supreme court deci-

sions concerning the issue of joint representation by members of a public defender's office. In *People v. Robinson* (1979), 79 Ill. 2d 147, 158, 159, 402 N.E.2d 157, 162, the supreme court held that joint representation of multiple criminal defendants by two or more members of a public defender's office does not constitute a *per se* conflict of interest so as to deprive those defendants of effective assistance of counsel and that a public defender's office is not subject to the rule that a conflict of interest affecting one member of a private law firm disqualifies all members of the firm.

In *People v. Spicer* (1979), 79 Ill. 2d 173, 187, 402 N.E.2d 169, 176, an actual conflict did not exist where defendant's counsel found it necessary to cross-examine a codefendant who was convicted in a separate trial and represented by a different assistant public defender. Upon an examination of the record on appeal, the supreme court found no evidence of impairment of cross-examination or evidence to suggest that defendant's interests were compromised in any way by the witness' representation by another assistant public defender. 79 Ill. 2d 173, 186, 402 N.E.2d 169, 176.

In *People v. Miller* (1980), 79 Ill. 2d 454, 461, 462, 404 N.E.2d 199, 202, 203, the supreme court reiterated its position that the disqualification of one assistant public defender due to a conflict of interest will not necessarily disqualify all members of the same office. After rejecting the *per se* analysis and scrutinizing the record for actual conflicts, the court concluded that none existed where different members of the public defender's office separately represented defendant and a witness to the case who was charged separately for the offense. The court examined the conflicts issue in light of the respective obligations of the attorneys involved. It was the duty of one attorney to represent defendant and the duty of the other to advise the witness of the implications of confessing in court. The court found that the limited role of the attorney representing the witness did not conflict with that of defense counsel. Moreover, the court observed that any attorney would have offered the advice given to the witness. 79 Ill. 2d 454, 462, 463, 404 N.E.2d 199, 203.

In *People v. Neely* (1980), 85 Ill. App. 3d 1016, 407 N.E.2d 814, defendant was represented by the office of the public defender of Cook County in his direct appeal from a murder conviction. After his conviction was affirmed, he filed a post-conviction petition and the office of the public defender of Cook County was again appointed to represent him. Post-conviction counsel requested leave to withdraw alleging the existence of a conflict of interest, since the petition raised a claim of incompetency of appellate counsel for not raising a certain

issue on direct appeal. After noting that nearly 300 lawyers were employed in the public defender's office, the court held that no actual conflict of interest existed with respect to the post-conviction appointment. 85 Ill. App. 3d 1016, 1019, 407 N.E.2d 814, 816.

The State contends on the basis of the above-cited authority that no *per se* conflict of interest exists with respect to O.S.A.D.'s representation of Roby. Moreover, the State argues that no actual conflict exists.

■ Under *Robinson*, no *per se* conflict of interest is present here. Therefore, this court must examine the facts unique to this case to determine whether an actual conflict is present. (*People v. Nelson* (1980), 82 Ill. 2d 67, 73, 411 N.E.2d 261, 265.) In order to effectively pursue the reasonable doubt issue, O.S.A.D. in its defense of Roby must vigorously pursue a course of action antagonistic to Brooks, unlike *Miller* where the witness was merely counseled with respect to his rights against self-incrimination. Thus, in *Miller*, the aim of the assistant public defender representing the witness was not to damage defendant's position but to protect that of the witness. The conflicts issue pertaining to antagonistic defenses in the instant case is much stronger than in *Miller*, since blame is placed squarely on Brooks under Roby's theory of the case.

Another factor suggesting the existence of an actual conflict of interest relates to the size and structure of the fifth district office of O.S.A.D. In *Neely*, for example, the public defender's office consisted of an appellate division and a trial division totalling nearly 300 attorneys. In contrast, the fifth district office employs only 11 attorneys working in close proximity. Office of the State Appellate Defender Annual Report, Fiscal Year 1986.

We are persuaded that O.S.A.D.'s fifth district office labors under an actual conflict of interest with respect to its representation of Roby based on the antagonism of his appellate defense in relation to Brooks and the limited number of attorneys employed by O.S.A.D.'s fifth district office.

The cases cited by the State dealing with the absence of a conflict of interest pertain to appointments made in the trial court. Underlying the holdings in these cases is the economic consideration that substitute counsel would have to be provided from a limited pool of competent attorneys at great public expense. (*People v. Robinson* (1979), 79 Ill. 2d 147, 159, 402 N.E.2d 157, 162.) The same is not true on the appellate level, where the conflict involves joint representation by members of the same district office of O.S.A.D. In the event such a conflict occurs, as in this case, one possible remedy is to transfer

the case to a different district office within O.S.A.D. Such a transfer would not burden counties with additional costs of providing for substitute counsel, as O.S.A.D. is funded through the State. Ill. Rev. Stat. 1985, ch. 38, par. 208—3.

O.S.A.D. resists the notion that a transfer of the appeal to a different district office will cure the conflict of interest. It seeks to avoid comparison with a trial court public defender's office and the analysis employed by *Robinson* that a conflict of interest affecting one member of the office does not constitute a *per se* disqualification of the remaining members of the office. Instead, it regards itself as comparing favorably to a private law firm due to its centralized structure and operation such that a conflict affecting one district office would disqualify the whole agency. See *People v. Fife* (1979), 76 Ill. 2d 418, 392 N.E.2d 1345; *Barliant v. Follett Corp.* (1978), 74 Ill. 2d 226, 384 N.E.2d 316; *People v. Stoval* (1968), 40 Ill. 2d 109, 239 N.E.2d 441.

O.S.A.D. asserts that the refusal of the supreme court in *Robinson* to apply a *per se* rule to cases involving joint representation by members of the public defender's office was influenced by the following factors: (1) the dissimilarity in structure between a public defender's office and a private law firm; (2) the absence in Illinois of a statewide public defender system; (3) the diversity of organization of public defender offices statewide; and (4) the absence of a sufficient number of attorneys possessing the necessary experience in the trial of criminal cases from which to make appointments as substitute counsel. The agency asserts that similar factors persuaded the appellate court in *People v. South* (1979), 70 Ill. App. 3d 245, 387 N.E.2d 1294, not to find a conflict of interest based on joint representation by members of the office of the Sangamon County public defender. The court found that office to be decentralized and regarded the joint representation afforded by its attorneys as not constituting a conflict of interest nor the appearance of a conflict. (70 Ill. App. 3d 245, 247, 387 N.E.2d 1294, 1296.) In reaching this decision, the court placed particular emphasis on the following facts: (1) that the public defender does not exert any supervisory control over its assistants; (2) that the assistants are appointed by the circuit judges with the recommendation of the public defender; (3) the assistants are solely responsible for their own cases, do not appear for each other, and do not discuss cases or exchange files with each other; (4) the assistants have no professional relationship with each other as each maintains his own private office; and (5) the only thing the assistants share is their title. 70 Ill. App. 3d 245, 246, 387 N.E.2d 1294, 1295.

O.S.A.D. contends that its centralized structure and operation dif-

fer markedly from the public defender offices discussed in *Robinson* and *South*. O.S.A.D. regards itself as akin to a private law firm with branch offices in each appellate district. In support of this contention, O.S.A.D. looks to the legislation which created it. Under section 9 of the State Appellate Defender Act (Ill. Rev. Stat. 1985, ch. 38, par. 208—9), the authority vested in the State Appellate Defender includes the power to: (1) establish an office in each judicial district; (2) appoint a deputy defender in each district subject to the approval of the majority of the appellate judges within that district; (3) approve personnel decisions of the deputy defenders within each judicial district; (4) establish and supervise training programs for his employees; and (5) promulgate rules, regulations, and orders consistent with the Act. Additional powers of the State Appellate Defender set forth under section 10 of the Act (Ill. Rev. Stat. 1985, ch. 38, par. 208—10) include submitting a budget for approval by the State Appellate Defender Commission and making salary recommendations for employees within the agency.

O.S.A.D. makes reference in its motion to withdraw to an employee manual that has been developed for the agency pursuant to the power vested in the State Appellate Defender under section 9(g) of the Act. The manual touches upon several areas relating to O.S.A.D.'s centralized structure and operation. In this regard, the following policies and procedures contained in the manual are given emphasis: (1) all dismissals of employees are reviewable by the State Appellate Defender; (2) bookkeeping for the agency, including payroll, is handled in its administrative office under the direct supervision of the State Appellate Defender; (3) deputy defenders are required to forward evaluations of district office employees to the State Appellate Defender; (4) monthly reports, including attorney reports and reports of all cases, must be filed with the administrative office; (5) the administrative office maintains records regarding all cases and the overall workload of each district office; (6) the State Appellate Defender establishes rules regarding office hours, vacations, sick days, leaves of absence, travel, and compensatory time; and (7) the State Appellate Defender establishes policies and procedures for the handling and supervision of cases on appeal. In order to achieve such policies and procedures, the manual provides that all attorneys maintain continuous open channels of communication.

O.S.A.D. stresses interaction among its staff attorneys statewide as another key element in support of its argument that it more closely resembles a private law firm than a public defender's office. Examples provided of this statewide interaction include publication of an

agency-wide newsletter prepared through a joint effort of assistant defenders and staff from various districts as well as bimonthly staff meetings involving the State Appellate Defender and deputy defenders, and other agency-wide staff meetings and conferences. Statewide interaction is also emphasized by the existence of a "Death Penalty Discussion Group" consisting of attorneys from each district office, a supreme court unit assigned to death penalty cases and the administrative office. The group meets periodically to discuss possible issues relating to death penalty appeals. O.S.A.D. notes that every brief to be filed in the Illinois Supreme Court is first sent to the State Appellate Defender. Moreover, oral arguments before that court are previewed by the State Appellate Defender and other attorneys in the administrative office.

O.S.A.D. points to the absence of a profit motive in its representation of indigent clients as the only significant factor distinguishing it from a private law firm. Nevertheless, it regards this distinction as *de minimis*, particularly in light of the supreme court's analysis in *People v. Coslet* (1977), 67 Ill. 2d 127, 133, 364 N.E.2d 67, 70, that the determination of a conflict of interest cannot rest solely on the source of financial gain by an attorney.

O.S.A.D. argues that no harsh collateral consequences would follow if, after finding the existence of an actual conflict of interest affecting the representation of a district office, this court would apply a *per se* analysis and disqualify the entire agency as if it were a private law firm. Unlike the shortage of experienced trial counsel as observed in *Robinson*, O.S.A.D. asserts that substitute counsel could be appointed from an abundant statewide supply of experienced appellate counsel, as most appellate work is performed in an attorney's office with minimal travel required except for oral argument.

■ The State in its objection argues that if this court finds the existence of an actual conflict of interest with respect to the fifth district O.S.A.D. office, as we have held above, then the cure would be a transfer of the appeal to a different district office. The State attacks O.S.A.D.'s premise that it should be regarded as a private law firm for purposes of conflict of interest analysis. The State notes that this court has held that O.S.A.D. does not labor under a conflict of interest where different district offices represent codefendants pursuing antagonistic defenses on appeal. *People v. Rogers* (1981), 101 Ill. App. 3d 614, 428 N.E.2d 547; *People v. Jones* (1982), 105 Ill. App. 3d 1143, 435 N.E.2d 823.

In *Rogers*, a distinction was drawn between conflicts involving trial counsel and appellate counsel:

"[A]ppellate representation does not involve to the same extent the risk attending trial representation that confidential communications will be abused or that divided loyalty will interfere with an attorney's ability to develop a favorable trial record. (See *Holloway v. Arkansas* (1978), 435 U.S. 475, 55 L. Ed. 2d 426, 98 S. Ct. 1173.) We believe these critical distinctions dictate that a standard less rigorous than the one applied to conflict of interest in trial representation ought to be applied in determining whether an assistant appellate defender is confronted with a conflict of interest as the result of action taken by another member of the appellate defender's staff." (*People v. Rogers* (1981), 101 Ill. App. 3d 614, 617, 428 N.E.2d 547, 549.)

Defendant Rogers was claiming that a conflict of interest existed with respect to his representation by the second district O.S.A.D. office where the fifth district office had represented a codefendant who had completed his appeal. This court rejected the argument that a conflict existed based on prior representation of the codefendant by the fifth district office and determined, after examining the facts unique to that case, that an actual conflict of interest did not exist. 101 Ill. App. 3d 614, 618, 428 N.E.2d 547, 550.

In *Jones*, defendant and a codefendant were simultaneously represented in their appeals by attorneys employed in different O.S.A.D. district offices and each raised defenses antagonistic to the other with respect to the issue of who was in control of an apartment where heroin was discovered. This court held that the joint representation did not constitute a *per se* conflict of interest and that no actual conflict existed where the position argued on behalf of defendant, although inconsistent with that taken by codefendant, was consistent with defendant's trial testimony and the motion to withdraw was made after the court filed its decision concerning the codefendant's appeal. Consequently, the court sustained its previous ruling denying O.S.A.D. leave to withdraw as counsel on appeal. *People v. Jones* (1982), 105 Ill. App. 3d 1143, 1147, 435 N.E.2d 823, 826.

While acknowledging the centralized administration of O.S.A.D., the State rejects the notion that the local offices are totally without autonomy and must yield completely to the central administration. Examples of local autonomy suggested by the State include the broad discretion and control exercised by deputy defenders in managing district offices. The State observes that no allegation has been made that the filing of briefs in this court requires more than the approval of a deputy defender. The State emphasizes that day-to-day contacts

among employees within the various district offices are minimal, particularly where the offices are separated by great distances. While the employee manual sets precise policy with respect to certain administrative and personnel matters, such as rules regulating office hours, vacations, sick days, leaves of absence, travel, and compensatory time for all employees, the State argues that the manual does not affect the ability of individual attorneys to competently and zealously represent their clients. Therefore, the State concludes that joint representation by separate O.S.A.D. district offices of codefendants with antagonistic defenses does not rise to the level of an actual conflict of interest.

The State disputes O.S.A.D.'s allegation that an abundant supply of competent attorneys exists from which to appoint substitute counsel in criminal appeals where conflicts of interest arise. According to the State, it would be difficult in many cases to find able appellate counsel possessing the level of expertise in criminal matters as that exhibited by O.S.A.D. Moreover, the State argues that the appointment of outside counsel would be a financial burden to counties.

O.S.A.D. moves this court for leave to file a response to the State's objection to its motion to withdraw. We grant this motion over the State's objection. In its response, O.S.A.D. takes issue with the State's characterization of the motion to withdraw as being predicated on a *per se* conflict of interest analysis. O.S.A.D. contends that it does not claim, nor has it previously claimed, that simultaneous representation of codefendants creates a *per se* conflict of interest. Rather, it states that it is alleging the existence of an actual conflict of interest affecting the fifth district office due to the antagonistic defenses of Roby and codefendant Brooks. However, once an actual conflict is established, O.S.A.D. applies a *per se* analysis with respect to each of its remaining attorneys. Therefore, it contends that a transfer of an appeal to a different district office does not obviate the conflict.

Next, O.S.A.D. seeks to distinguish *Miller* and *Spicer*. In *Miller*, the joint representation by members of the public defender's office involved a defendant and a witness. O.S.A.D. asserts that the absence of a conflict was attributed to the limited role performed by counsel in advising the witness of the implication of confessing to the crime and how this advice would have been given by any other competent attorney called on to represent the witness. Also, the absence of an actual conflict was or could be attributed to the decentralized structure of the public defender's office. In contrast, O.S.A.D. regards itself as highly centralized and akin to a private law firm.

The agency seeks to distinguish *Spicer* on the basis that the

defendant and codefendant were not represented simultaneously by members of the public defender's office since the codefendant was already convicted when he took the stand. In contrast, O.S.A.D. simultaneously represents Roby and Brooks in their direct criminal appeals.

Finally, O.S.A.D. challenges the State's allegation that the appointment of private counsel due to a conflict of interest affecting a district office would impose a substantial burden on counties which are ill-equipped financially to bear it. O.S.A.D. regards this allegation as merely speculative and asserts that nothing has been presented by the State which shows that appointed private counsel would significantly increase the financial burden to counties or that counties are unprepared to meet any additional costs related to defendant's right to conflict-free counsel. It is O.S.A.D.'s position that considerations of cost are in no way relevant to finding the existence of a conflict or to the proper remedy required to cure that conflict.

The State in its objection to O.S.A.D.'s motion for leave to file a response to the objection to the original motion to withdraw attacks the assertion that O.S.A.D. is by analogy one huge private law firm. The State asserts that it is aware of no private law firm organized along the lines of O.S.A.D. with a separate administrative office and virtually autonomous district offices. Moreover, the State points out that attorneys within O.S.A.D. have no mutual economic interest with respect to the outcome of their cases. The State contends that although a conflict of interest need not be based exclusively on economic interest in the outcome of a case, such interest would be a factor to be considered in determining whether or not a conflict exists and that such a factor is absent where the agency appears as counsel of record. *People v. Coslet* (1977), 67 Ill. 2d 127, 133, 364 N.E.2d 67, 70.

Notwithstanding O.S.A.D.'s central administration, its employee manual, and claims of close and continuous interaction among agency attorneys, we do not find that the structure and operation of O.S.A.D. has differed in any significant way since this court's decisions in *Rogers* and *Jones*. Significantly, despite allegations that the State Appellate Defender coordinates operations among the district offices and reviews briefs in death penalty cases and other appeals in the supreme court, no claim is made that a deputy defender lacks autonomy to approve the filing of briefs in his or her appellate district without prior review or approval. Because of this autonomy, there is no basis to the claim that representation by attorneys in different district offices would result in divided loyalties where multiple defendants pose antagonistic defenses. In essence, each district office is free

to pursue its own appellate strategies notwithstanding the other centralized features of O.S.A.D.

We hold that representation of Roby and Brooks by different district offices of O.S.A.D. does not constitute a conflict of interest, either *per se* or actual, and reject the premise that O.S.A.D. is the same as a private law firm, particularly given the autonomy enjoyed by the district offices and the absence of a profit motive; nor do we regard this latter distinction as *de minimis*. *People v. Stoval* (1968), 40 Ill. 2d 109, 112, 239 N.E.2d 441, 443.

■ The remaining conflicts issue appears in the context of three appeals involving the denial or dismissal of post-conviction petitions. In these appeals, O.S.A.D.'s fourth district office moves to withdraw due to a conflict of interest where its zealous representation of petitioners may require it to challenge the effectiveness of counsel on direct appeal, attorneys from the fifth district office, in order to avoid the harsh effects of waiver and *res judicata* with respect to matters not pursued on direct appeal.

In No. 5—85—0727, Muriel D. Black appeals from the denial of his post-conviction petition. He was convicted of armed robbery and was sentenced to an indeterminate term of not less than 30 nor more than 100 years in prison. He was represented on direct appeal by O.S.A.D.'s fifth district office. His conviction and sentence were affirmed by this court pursuant to a Supreme Court Rule 23 order (89 Ill. 2d R. 23) entered on February 5, 1979. (*People v. Black* (5th Dist., Feb. 5, 1979), No. 78—10 (unpublished Rule 23 order).) On November 1, 1984, Black filed a *pro se* petition for post-conviction relief alleging that his appellate counsel on direct appeal was ineffective. The petition was ultimately dismissed without an evidentiary hearing on the State's motion, and a timely notice of appeal was filed. O.S.A.D.'s fifth district office was appointed to represent him on appeal. That office moved to withdraw as counsel on appeal due to a conflict of interest where its representation was called into question in the post-conviction proceedings. This court, over the State's objection, allowed the motion and appointed the fourth district office as substitute counsel.

In cause No. 5—86—0020, Melvin Dixon was convicted of rape and sentenced to 20 years' imprisonment. He was represented on direct appeal by O.S.A.D.'s fifth district office. His conviction and sentence were affirmed by this court on September 14, 1982, pursuant to a Supreme Court Rule 23 order. (*People v. Dixon* (1982), 108 Ill. App. 3d 1224 (unpublished Rule 23 order).) On February 15, 1984, Dixon initiated post-conviction proceedings in the circuit court. His original and amended petitions included allegations that appellate counsel was

ineffective on direct appeal. The proceedings were concluded on December 9, 1985, when the circuit court granted the State's motion to dismiss. Dixon filed a timely notice of appeal and the fifth district O.S.A.D. office was appointed to represent him. That office filed a motion to withdraw due to a conflict of interest where the effectiveness of its representation was called into question in the post-conviction proceedings. This court granted the fifth district office leave to withdraw as counsel on appeal over the State's objection and appointed the fourth district office as substitute counsel.

In No. 5—86—0199, Jimmy Drummond was convicted of the offense of murder and sentenced to 25 years' imprisonment. The fifth district O.S.A.D. office was appointed to represent him on direct appeal. His conviction and sentence were affirmed by this court. (*People v. Drummond* (1980), 87 Ill. App. 3d 890, 409 N.E.2d 361.) Thereafter, he sought post-conviction relief. Contained in his original petition and amended petitions are allegations touching upon the ineffectiveness of direct appellate counsel. The post-conviction proceedings were terminated on March 4, 1986, when the circuit court granted the State's motion to dismiss. Drummond filed a timely notice of appeal and O.S.A.D.'s fifth district office was appointed to represent him before this court. That office filed a motion with this court to withdraw as counsel on appeal due to a conflict of interest arising out of Drummond's allegations of ineffective assistance on direct appeal. The motion was granted over the State's objection and the fourth district office was appointed as substitute counsel.

Each motion to withdraw is grounded on the premise that all O.S.A.D. district offices comprise one entity for conflicts purposes whereby a conflict affecting one attorney employed by the agency operates to disqualify the entire agency. Thus, the transfer of each appeal to the fourth district office on motion of the fifth district office is perceived by O.S.A.D. as no solution to the conflict affecting the agency as a whole. O.S.A.D. relies on *People v. Terry* (1970), 46 Ill. 2d 75, 262 N.E.2d 923, and *People v. Smith* (1967), 37 Ill. 2d 622, 230 N.E.2d 169, in contending that it should not be required to challenge the effectiveness of one or more present staff attorneys.

In *Terry*, the order denying defendant's post-conviction petition was reversed and the cause remanded where his counsel failed to consult with him on the petition. (*People v. Terry* (1970), 46 Ill. 2d 75, 78, 262 N.E.2d 923, 925.) The supreme court directed on remand that counsel other than the public defender be appointed to represent defendant due to allegations in the petition regarding the ineffectiveness of the public defender who represented defendant in proceedings

on his underlying plea of guilty. 46 Ill. 2d 75, 79, 262 N.E.2d 923, 926.

In *Smith*, the public defender of Cook County was appointed as petitioner's counsel in a post-conviction proceeding. The petition for post-conviction relief alleged, *inter alia*, that petitioner's trial counsel, an assistant public defender, was incompetent. The supreme court held that the appointment created a conflict of interest situation denying petitioner effective assistance of counsel. It therefore reversed the order dismissing the petition and remanded for further proceeding with counsel other than the public defender. *People v. Smith* (1967), 37 Ill. 2d 622, 624, 230 N.E.2d 169, 170.

The State in its objection asserts that this court has stated previously that no disqualifying conflict exists where a different district office of O.S.A.D. represented a defendant after it was determined that the fifth district office labored under a conflict. (*People v. Rogers* (1981), 101 Ill. App. 3d 614, 428 N.E.2d 547; *People v. Jones* (1982), 105 Ill. App. 3d 1143, 435 N.E.2d 823.) The State considers the representation by the fourth district office in each appeal to be free of actual conflict. *People v. Neely* (1980), 85 Ill. App. 3d 1016, 407 N.E.2d 818.

As we have already stated, the mere showing that different district offices of O.S.A.D. simultaneously represent codefendants with antagonistic defenses does not automatically produce a disqualifying conflict; likewise, there must be a showing of an actual conflict before disqualification of post-conviction appellate counsel is in order based on alleged ineffectiveness by members of the agency on direct appeal. (*People v. Robinson* (1979), 79 Ill. 2d 147, 402 N.E.2d 157.) The determination of an actual conflict is made on a case-by-case basis (*People v. Nelson* (1980), 82 Ill. 2d 67, 73, 411 N.E.2d 261, 265) and must take into account that a less rigorous standard applies to appellate counsel than to trial counsel (*People v. Rogers* (1981), 101 Ill. App. 3d 614, 428 N.E.2d 547; *People v. Jones* (1982), 105 Ill. App. 3d 1143, 435 N.E.2d 823). The actual conflict of interest analysis in *Robinson* and *Nelson* was developed in the context of multiple representation of codefendants by members of the same public defender's office. There is no need to depart from this analysis where the attorneys involved are employed by O.S.A.D. In these latter three appeals, the conflicts issue does not focus on multiple representation but on the need to challenge the effectiveness of prior counsel on direct appeal. We perceive no reason to deviate from the actual conflict of interest standard in determining whether post-conviction appellate counsel from the fourth district O.S.A.D. office labors under a conflict of interest in asserting the ineffectiveness of direct appellate counsel from the fifth district

office. (*People v. Walton* (1979), 78 Ill. 2d 197, 200, 399 N.E.2d 588, 589; *People v. Neely* (1980), 85 Ill. App. 3d 1016, 1018, 407 N.E.2d 814, 816.) In *Walton*, the supreme court held that a public defender did not labor under a conflict of interest in representing petitioner in a post-conviction proceeding even though an issue was raised concerning the effectiveness of counsel's predecessor in office who represented petitioner at trial on the underlying criminal offense. (*People v. Walton* (1979), 78 Ill. 2d 197, 201, 399 N.E.2d 588, 589.) This same standard was applied in *Neely*, where it was held that no actual conflict of interest precluded post-conviction counsel employed as an assistant public defender in the trial division of the public defender's office in Cook County from challenging the competency of counsel on direct appeal employed by that office's appeals division. *People v. Neely* (1980), 85 Ill. App. 3d 1016, 1019, 407 N.E.2d 814, 817.

O.S.A.D. relies on its employee manual in support of its argument that a transfer of these three appeals to the fourth district office did not cure the conflict of interest relating to the fifth district office. For the reasons noted above, we find this reliance to be misplaced. The manual does not bestow on O.S.A.D. the attributes of a private law firm. Therefore, its existence will have no weight on this court's determination as to whether the fourth district office labors under a conflict of interest.

■ The cases cited by O.S.A.D. in support of its withdrawal and the appointment of counsel outside of the agency do not warrant such relief. *Smith* has been limited to its facts and does not authorize a *per se* conflict analysis where the charge of ineffectiveness is ascribed to an attorney employed in the same public defender office. (*People v. Neely* (1980), 85 Ill. App. 3d 1016, 1018, 407 N.E.2d 814, 816; *People v. Miller* (1980), 79 Ill. 2d 454, 462, 404 N.E.2d 199, 203.) In *Terry*, a conflict arose when an assistant public defender represented a defendant in post-conviction proceedings even though the petition alleged that the public defender acted incompetently in representing defendant at trial. Unlike *Terry*, the conflict posed by O.S.A.D. does not involve counsel employed in the same district office. In recognition that members of the fifth district office would be required to labor under a conflict of interest in asserting the ineffectiveness of colleagues appearing as direct appellate counsel, this court transferred each appeal to the fourth district office. This transfer obviates any conflict relating to the fifth district office. O.S.A.D. cannot now demonstrate sufficient facts peculiar to these appeals that would pose an actual conflict and affect the vigorous and zealous representation being afforded to each petitioner by the fourth district office.

For the reasons stated above, we grant the fifth district O.S.A.D. office leave to withdraw in cause No. 5—86—0031 and appoint the fourth district office as substitute counsel. We deny the respective motions for leave to withdraw in Nos. 5—85—0727, 5—86—0020, and 5—86—0199.

No. 5—86—0031—Motion to withdraw granted; Office of State Appellate Defender, Fourth Judicial District appointed as substitute counsel.
No. 5—85—0727—Motion to withdraw denied.
No. 5—86—0020—Motion to withdraw denied.
No. 5—86—0199—Motion to withdraw denied.

KASSERMAN and WELCH, JJ., concur.