569 N.E.2d 529 (1991)
210 Ill. App.3d 651
155 Ill.Dec. 348
In re T.M., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. T.M., Respondent-Appellant).
No. 2-89-0134.
Appellate Court of Illinois, Second District.
March 12, 1991.
*530 G. Joseph Weller, Deputy Defender, Elgin, Robert C. Cooper, Thomas A. Lilien, Asst. Defender, Office of State Appellate Defenders, Elgin, for T.M.
Michael J. Waller, Lake County State's Atty., Waukegan, William L. Browers, Deputy Director, David A. Bernhard, State's Attys. Appellate Prosecutor, Elgin, for the People.
Justice BOWMAN delivered the opinion of the court:
T.M., the minor respondent, was charged by a petition to revoke probation, stating that he was a delinquent minor (Ill.Rev. Stat.1987, ch. 37, par. 805-3) and had committed criminal damage to property under $300 (Ill.Rev.Stat.1987, ch. 38, par. 21-1(a)). Following a joint trial with D.C., minor corespondent, T.M. was found guilty and, after a dispositional hearing, committed to the Department of Corrections (DOC).
Defendant raises two issues on appeal: (1) his appointed attorney had a conflict of interest which denied him a fair trial, and (2) his sentence to the DOC was an abuse of the court's discretion.
T.M. and D.C. were represented by separate public defenders, both of whom were employed by the Lake County public defender's office. Upon T.M.'s case being called for hearing, the State moved to consolidate T.M.'s case with that of D.C. While the hearing record does not reflect an objection by either public defender, the judge stated the cases would be joined over objection of the attorneys.
The State's evidence revealed that T.M. and D.C. were students attending Reach Program classes at Waukegan East High School. Pursuant to program rules a teacher's aide escorted T.M. and D.C. to a boy's washroom. Ten seconds after they entered, the teacher's aide heard loud banging noises lasting a few seconds. She entered the washroom and observed T.M. on his way out and D.C. standing at the urinal. She noticed a metal stripping torn off a stall door and the stall itself damaged. The damage was not present when she was last inside the washroom a couple of days earlier. A dean of students testified he was in the washroom several hours earlier and the stall was undamaged. He observed damages to the stall door, commode, and sink. He estimated repair costs at $295. After the State rested its case in chief, T.M.'s and D.C.'s attorneys argued motions for directed findings. The court denied the motions, stating that the circumstantial evidence was sound and, based on its extent and the loud banging noises, all of the damage could not have been done by one person alone. T.M. and D.C. presented no evidence and were found guilty.
After T.M. was committed to the DOC, his attorney filed a motion for a new trial and pointed out for the first time the following: after the alleged offense, T.M. and D.C. had each given school authorities statements exculpating themselves and implicating the other. According to the motion T.M. initially had told his attorney that he wished to testify that D.C. alone committed the damage. However, during the joint trial, D.C. was given the opportunity to testify first but refused to do so. Thereafter, T.M. also declined to testify. T.M.'s attorney argued that T.M. declined to testify because D.C.'s presence in the courtroom had a "chilling" effect on him, and he *531 buckled to peer pressure because D.C. declined to testify.
The court denied the motion, commenting that the joinder was proper under the evidence presented and that T.M. was not prejudiced.
T.M., in support of his theory that his attorney had a conflict of interest, points out the following: both attorneys were employed in the same small public defender's office; mirror defenses were presented; his attorney failed to present evidence of his exculpatory statement to school officials.
The Illinois Supreme Court has refused to find that representation of multiple defendants by attorneys from the same public defender's office gives rise to a per se conflict of interest that deprives the defendant of effective assistance of counsel. (People v. Banks (1987), 121 Ill.2d 36, 117 Ill.Dec. 266, 520 N.E.2d 617; People v. Robinson (1979), 79 Ill.2d 147, 37 Ill.Dec. 267, 402 N.E.2d 157.) To prevail on a claim of ineffective assistance of counsel due to joint representation, a defendant must show an actual conflict of interest manifested at trial. (People v. Berland (1978), 74 Ill.2d 286, 299-300, 24 Ill.Dec. 508, 385 N.E.2d 649; People v. Vriner (1978), 74 Ill.2d 329, 341, 24 Ill.Dec. 530, 385 N.E.2d 671.) The determination of an actual conflict is made on a case-by-case basis. (People v. Nelson (1980), 82 Ill.2d 67, 73, 44 Ill.Dec. 292, 411 N.E.2d 261.) When incompetency of trial counsel is alleged, the reviewing court must indulge in a strong presumption that counsel's conduct falls within a wide range of professional assistance. (People v. Albanese (1984), 104 Ill.2d 504, 526, 85 Ill.Dec. 441, 473 N.E.2d 1246.) Mere hypothetical or speculative conflicts will not suffice. People v. Berland, 74 Ill.2d at 301, 24 Ill.Dec. 508, 385 N.E.2d 649.
Respondent cites People v. Black (1987), 154 Ill.App.3d 1076, 107 Ill.Dec. 868, 507 N.E.2d 1237, in support of his premise that the antagonistic defenses of T.M. and D.C., asserting innocence and implicating each other, created an actual conflict of interest. In Black, the office of the Fifth District State Appellate Defender (OSAD) represented codefendants Roby and Brooks on separate appeals. The court found that OSAD's fifth district office, which employed 11 attorneys, labored under an actual conflict of interest in its representation of Roby based on the antagonism of its appellate defense in relation to Brooks and the limited number of attorneys working in close proximity in that office. People v. Black, 154 Ill.App.3d at 1080, 107 Ill.Dec. 868, 507 N.E.2d 1237.
We recognize that appellate representation, like that in Black, does not implicate to the same extent the risk attendant on trial representation that confidential communications will be abused or that divided loyalty will interfere with an attorney's ability to develop a favorable trial record. (People v. Rogers (1981), 101 Ill.App.3d 614, 617, 56 Ill.Dec. 955, 428 N.E.2d 547.) Accordingly, we also acknowledge that appellate representation cases call for a less vigorous standard than that which is applicable when a trial representation situation is involved. (Rogers, 101 Ill.App.3d at 617, 56 Ill.Dec. 955, 428 N.E.2d 547.) Nevertheless, we do not believe Black requires a finding of an actual conflict in this case. The Black court did not rely solely on the fact that the codefendants presented antagonistic defenses. The court made clear that the limited number of attorneys, who worked in close proximity to one another, was also a significant factor in its decision. In contrast, there is nothing in the record now before us to show the number of attorneys employed in the Lake County public defender's office or their working relationship. We find it highly questionable whether, absent information regarding the number and work conditions of the attorneys involved there, the Black court would have found an actual conflict of interest. In our opinion, this case is not controlled by Black.
T.M. relies also on People v. Vaughn (1990), 200 Ill.App.3d 765, 146 Ill.Dec. 516, 558 N.E.2d 479, in support of his claim that his counsel had a conflict which denied him effective legal assistance. In Vaughn, defendant filed a pro se motion to withdraw a *532 guilty plea, alleging his public defender attorney failed to explain the particular aspects of his case before he pleaded guilty and thereby provided ineffective assistance of counsel. At the motion hearing to withdraw his plea of guilty, defendant refused to accept another public defender from the same office because, according to defendant, that particular public defender had been defendant's trial attorney's partner when his case was first heard and therefore had a conflict of interest. The trial court refused defendant's request to appoint a nonpublic defender as his attorney. Thereafter, defendant proceeded pro se. His motion to withdraw the guilty plea was denied.
Potential conflict of interest evidence available to the reviewing court was (1) defendant's statement that the public defender the court offered to appoint had been defendant's trial attorney's partner when defendant's case was first heard, (2) defendant was alleging incompetency of his trial attorney and did not want that attorney's partner representing him, and (3) the court records reflected the two public defenders had provided joint representation to various defendants in other cases before the same trial judge who heard defendant's plea and motion to withdraw it. The reviewing court ruled the trial court erred when it failed to conduct a hearing on the evidence presented to determine whether a conflict of interest did in fact exist and remanded the case to the trial court with a mandate to conduct such hearing. In reliance on Vaughn, defendant asks we remand the case to the trial court to determine if his attorney had a conflict of interest based on the premise that the trial court record strongly indicates the existence of such conflict. The evidence in Vaughn specifically points to a potential conflict of interest between two public defenders who worked in the same courtroom and participated in a number of joint trials when one is asked to represent a defendant who charges the other public defender with a conflict of interest. Similar facts are not present in respondent's case, and we disagree with respondent's contention that the trial and post-trial conduct coupled with the fact that both public defenders are employed in the same office strongly indicates the existence of a close, personal relationship between respondent's and D.C.'s public defenders.
T.M. next argues that failure of his attorney to bring forth evidence of his exculpatory statement during cross-examination of the State's witnesses was proof of less than vigorous representation which supports his claim that the attorney conflict resulted in ineffective assistance of counsel. Implicit in this argument is that T.M.'s attorney did not cross-examine on this point because of an allegiance owed to D.C. or D.C.'s attorney as a public defender from the same office. A more reasonable alternative rational to explain the absence of such evidence is the hearsay rule which, absent a recognized exception, would make T.M.'s exculpatory statements to school officials inadmissible. It should be noted that T.M. does not raise the issue of ineffective assistance of counsel based on standards established in Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674.
Respondent focuses also on indication in the record that, although T.M.'s attorney was prepared to have him testify in support of his exculpatory position, T.M. declined to testify when given the opportunity. T.M. claims that he did not testify because of the "chilling" effect of D.C.'s presence and the peer pressure resulting from D.C.'s refusal to testify. It is undisputed that respondent's attorney did not make an objection to a joint trial on the specific basis that T.M. would be intimidated if tried together with D.C. T.M. argues that his attorney's failure to make such an argument reflects a lack of vigorous representation which, in turn, is indicative of an attorney conflict. We find that respondent's argument regarding the chilling effect of a joint trial, while novel, fits well into the category of speculation and conjecture. As such it is insufficient to support a finding of an actual attorney conflict.
In denying T.M.'s motion for a new trial, the court stated the joinder of the corespondents was consistent with section 114-7 *533 of the Code of Criminal Procedure of 1963 (Ill.Rev.Stat.1987, ch. 38, par. 114-7) (joinder of related prosecutions) and that T.M. was not prejudiced. We agree.
Although the hearing would have flowed along lines of higher professional standards if the details of the antagonistic defenses had been fully explained to the court initially, the irrefutable fact is that they were later made fully known to the court, which concluded in retrospect that no actual prejudice resulted to the minor.
Next, T.M. alleges that his commitment to the DOC was an abuse of the court's discretion. The choice of a dispositional order rests within the sound discretion of the trial court, and, absent a showing of abuse, the trial court's determination should not be reversed on review. (In re Griffin (1982), 92 Ill.2d 48, 54, 64 Ill.Dec. 948, 440 N.E.2d 852; In re Napier (1980), 83 Ill.App.3d 503, 506, 39 Ill.Dec. 39, 404 N.E.2d 423.) After reviewing the record, we find no abuse of the trial court's discretion.
The dispositional hearing evidence showed that T.M., age 13, had been adjudicated a ward of the court in 1986 for attempted residential burglary and two counts of theft and had violated probation by committing the offense of burglary to a motor vehicle. In 1987, respondent had been charged with attempted theft and aggravated battery, readjudicated a ward of the court, and placed in S.T.A.Y. for one year. In November 1988 he had been placed on intensive probation for the offense of misdemeanor theft and three weeks later had violated probation by committing the offense of criminal damage to property. T.M.'s mother had tried but was unable to control his behavior. Although T.M. did not have a drug or alcohol problem, he had had 27 police contacts since 1984. While in juvenile custody awaiting a dispositional hearing in this case, his conduct had been relatively well behaved. Three residential placement agencies evaluated T.M. for purposes of the dispositional hearing in this case. One rejected T.M. based on his negative criminal behavior, low IQ, and lack of impulse control. The other two agencies would accept T.M. only on a 30-day probationary status. Cumulatively, the evidence supports the sentence imposed by the trial court.
Respondent argues the court erred in failing to place him in a residential treatment center which indicated he would be conditionally acceptable and cites in support of his position In re B.S. (1989), 192 Ill.App.3d 886, 140 Ill.Dec. 44, 549 N.E.2d 695, and In re M.D.B. (1984), 121 Ill.App.3d 77, 76 Ill.Dec. 580, 458 N.E.2d 1380. We distinguish In re B.S. wherein experts testified B.S. would best respond to a residential placement treatment, and commitment to the DOC would be, at the least, inappropriate and, at worst, extremely destructive. In committing B.S. to the DOC, the trial judge stated he had no other option because none had been provided. The hearing record indicated the attorneys for the State and respondent were not fully prepared to advise the court of all possible placement alternatives and the case was therefore remanded to the trial court for a new dispositional hearing. In the case sub judice, the court was fully advised of alternative placements at the dispositional hearing.
The only finding specifically necessary before making a commitment to the DOC of a minor declared a delinquent and a ward of the court are those stated in the Juvenile Court Act of 1987 (Act) (Ill.Rev. Stat.1989, ch. 37, par. 801-1 et seq.; In re S.R.F. (1980), 80 Ill.App.3d 738, 740, 35 Ill.Dec. 854, 399 N.E.2d 1382). Prior to 1983, Illinois law permitted a minor to be committed to the DOC only if the court found (a) his parents are unable, for some reason other than financial circumstances alone, to care for, protect, train, or discipline the minor, and the public would not be served by placement under section 5-7 of the Act. (Ill.Rev.Stat.1981, ch. 37, par. 705-10(1); see In re M.D.B., 121 Ill.App.3d 77, 76 Ill.Dec. 580, 458 N.E.2d 1380.) A 1983 amendment to the Act enlarged the court's discretion in committing an adjudicated ward to the DOC. Pursuant to that amendment:
*534 "When any delinquent has been adjudged a ward of the court under this Act, the court may commit him to the Department of Corrections, Juvenile Devision, if it finds that (a) his parents, guardian or legal custodian are unfit or are unable, for some reason other than financial circumstances alone, to care for, protect, train or discipline the minor, or are unwilling to do so, and the best interests of the minor and the public will not be served by placement under Section 5-29; or (b) it is necessary to ensure the protection of the public from the consequences of criminal activity of the delinquent." (Emphasis added.) Ill.Rev. Stat.1989, ch. 37, par. 805-33(1).
We note the distinction described above because T.M. has cited case law, i.e., In re M.D.B. (121 Ill.App.3d 77, 76 Ill.Dec. 580, 458 N.E.2d 1380), which uses language interpreting the Illinois statutes relating to commitment of minors to the DOC as it existed prior to 1983.
In committing T.M., the hearing judge noted that T.M.'s mother, for reasons other than financial, was willing but unable to care for, protect, train or discipline him, and that it was in the best interest of the minor and the public that he be deterred from committing other crimes and that commitment was necessary to protect the public from the consequences of his criminal activity. The finding of the hearing judge is consistent with both the evidence presented at the dispositional hearing and the provisions of section 5-33(1)(b) of the Act (Ill.Rev.Stat.1989, ch. 37, par. 805-33(1)(b)). We find no abuse of the court's discretion in T.M.'s sentence to the DOC.
For these reasons, the judgment of the circuit court of Lake County is affirmed.
Affirmed.
REINHARD, P.J., and DUNN, J., concur.